**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              :
**ANTOINETTE WOODLAND,**         :
                                              :
        Plaintiff,                       :   Case No.: 1:05-cv-01611-PLF
                                              :
v.                                            :
                                              :
**VIACOM, INC.,**                         :
                                              :
        Defendant.                    :
_____   :

**PLAINTIFF ANTIONETTE WOODLAND'S RESPONSE IN OPPOSITION TO**
**DEFENDANT VIACOM, INC.'S RULE 19 MOTION TO DISMISS**

     COMES NOW the Plaintiff, **ANTOINETTE WOODLAND**, by and through her counsel, the Law Office of Jimmy A. Bell, P.C., and Jimmy A. Bell, Esq., and respectfully submits her Memorandum of Response in Opposition to Defendant Viacom, Inc.'s Rule 19 Motion to Dismiss.  Defendant's Motion to Dismiss must be denied because it fails to cite the appropriate legal standard and controlling case law of this judicial Circuit.  Defendant Viacom, Inc. ("Viacom"), is Plaintiff's employer and for this reason, BET is not only *not* an indispensable party, BET is superfluous to this action in Plaintiff's view.  Defendant is responsible for implementing and controlling discrimination policies and procedures in Plaintiff's workplace.  Defendant controls compliance with those policies and procedures.  Defendant issues Plaintiffs paycheck.  Defendant qualifies as Plaintiff's employer.  Dismissal pursuant to Fed. R. Civ. P. 19 is thus improper.  Plaintiff's well-pled Complaint will withstand Defendant's Motion.

## **FACTS**

Plaintiff filed her Complaint in this action on August 12, 2005, and served the Defendant on September 30, 2005.  In her Complaint, Plaintiff states succinctly and correctly that she is an employee of Defendant.  (Complaint ¶ 6).  Plaintiff bases this factual statement on solid documentary evidence.  When it acquired its BET business unit, Defendant took over paying Plaintiff and withholding her Federal income taxes and other deductions as employers are required by law to do.  See, Exhibit 1, Plaintiff's Paystub Processed by Defendant's Payroll ("Paystub").  When it acquired BET, Defendant issued Plaintiff a Business Conduct Statement that Plaintiff was required to certify as Defendant's employee.  See, Exhibit 2, Plaintiff's Copy of Defendant's Business Conduct Manual ("Business Conduct Manual"); see also, Exhibit 3, Viacom Business Conduct Statement Employee Certification ("Employee Certification").  With regard to business compliance and ethics, Defendant exercises such significant control over BET that BET Vice President Quinton Bowman passed through unedited, to all employees of Defendant's BET unit, a "Viacom Memo" on that subject.  See, Exhibit 4, Plaintiff's Copy of E-mail from Tom Freston & Leslie Moonves to All of Defendant's Employees ("Moonves E-mail").

These documents are actually in Defendant's control.  At least two of them have been provided to Defendant's counsel as part of the Plaintiff's Rule 26(a)(1) initial discovery disclosures.  The others were retrieved from Plaintiff's own personnel file, which is, if anything, more available to Defendant than to Plaintiff.  See, Exhibit 5, Affidavit of Antoinette Woodland ("Woodland Aff.").

**ARGUMENT**

I.  **Defendant Misstates the Law of This Judicial Circuit; Under the "Single Employer Doctrine" Adopted by This Court in EEOC v. St. Francis Xavier Parochial Sch., 928 F. Supp. 29 (D.D.C. 1996), Defendant is Plaintiff's Employer and Dismissal Pursuant to Rule 19 is Inappropriate**

Defendant's Motion to Dismiss relies on the argument that BET is an indispensable party to this action and cannot be joined to this action without defeating this Court's diversity jurisdiction. Defendant thus argues for dismissal pursuant to Fed. R. Civ. P. 19. Defendant has, however, ignored the law of this circuit, which holds that where sufficient facts exist to show an interrelationship between an employer subsidiary and its corporate parent that justifies an aggrieved plaintiff's belief that the corporate parent is jointly responsible for the acts of the subsidiary business unit, the corporate parent is liable. See, EEOC v. St. Francis Xavier Parochial Sch., 928 F. Supp. 29, 33 (D.D.C. 1996) (hereinafter, "St. Francis Xavier"). Under this "integrated enterprise theory," or "single employer doctrine," this Court looks at four factors to determine the degree of interrelationship that exists: 1) the interrelation of operations; 2) common management; 3) centralized control of labor relations; and 4) common ownership or financial control. Id. While the presence or absence of any one factor is not conclusive, control over the elements of labor relations is a central concern. Id.

The Court will apply this test because the question of whether a parent is liable for the acts of its subsidiary will, in the context of a discrimination claim, decide whether the parent is an employer within the meaning of the law. Id. An individual may be the employee of more than one employer. Id., n3. Enterprises that appear to be discreet entities can represent a single integrated enterprise, and if they do, they are exposed to liability as a single employer. Id. (citing to St. Francis Xavier, 928 F. Supp. at 33).

3

In arguing that this Court must not "pierce the corporate veil" absent extraordinary circumstances, defense counsel has also attempted to draw a veil over the law and the facts applicable to Plaintiff's case in a vain attempt to shield Defendant from this Court's scrutiny.  Circumstances that justify holding Defendant liable in this matter do indeed exist and Defendant itself is in possession of the documents demonstrating their existence.  Defendant's failure to bring these facts to this Court's attention in its motion, coupled with its failure to cite to controlling law of this jurisdiction, skates perilously close to perpetrating a fraud upon this Court.[1]  BET is not an indispensable party, because Defendant is Plaintiff's employer.  Defendant controls the implementation and compliance with discrimination policy and procedures in Plaintiff's workplace.  Defendant pays Plaintiff.  Plaintiff is justified in her belief that Defendant is liable for her injuries, and Defendant must be so held.  BET is thus superfluous to this action in Plaintiff's view.  Dismissal pursuant to Rule 19 cannot be justified on the record.

     **A.**     **Defendant is Plaintiff's Employer Because Defendant and BET Have Common Ownership; Defendant Exercises Substantial Control Over BET's Labor Relations; Defendant and BET Have Interrelated Operations; and Defendant and BET Have Common Management**

In discrimination cases, this Court will apply a four-factor test to determine whether a corporation is liable for the illegal discriminatory acts of a subsidiary.  See, St. Francis Xavier, 928 F. Supp. 29 (D.D.C. 1996) (applying the test to an Americans with Disabilities Act claim); see also, Richard v. Bell Atl. Corp., 946 F. Supp. 54 (D.D.C.

---

[1] Indeed, as an officer of the Court, defense counsel had an affirmative duty to address these materials and their implications in its Motion to Dismiss Pursuant to Rule 19, but failed to do so.  Plaintiff's counsel brought these documents to the Court's and defense counsel's attention during the Initial Scheduling Conference, facts Defendant readily concedes.  Moreover, Plaintiff's Paystub and the Business Conduct Manual were disclosed to Defendant as part of Plaintiff's Rule 26(a) Initial Disclosures.  Despite this, Defendant fails to cite controlling law of this circuit and fails to present and address the relevant facts in this matter.

4

1996) (hereinafter, "Richard") (applying test to Title VII claims)[2]; see also, Hunter v. Ark Restaurants Corp., 3 F. Supp. 2d 9 (D.D.C. 1998) (applying test to D.C. Human Rights Act, or "DCHRA," claim). While the Defendant was quick to point out to this Court that the doctrine of limited liability creates a strong presumption that a parent is not the employer of a subsidiary's employees, Defendant failed to inform the Court of this test, and have instead let this necessary task fall to Plaintiff's responsibility. Cf., Richard, 946 F. Supp. at 61 (treating defendant's motion to dismiss as a motion for partial summary judgment in remarkably similar litigational case posture).

Where evidence exists showing an interrelationship between parent and subsidiary in the areas of 1) interrelation of operations; 2) centralized control of labor; 3) common management; and 4) common ownership or financial control, parent and subsidiary are treated as a single employer, and the parent is held liable for acts that amount to discrimination by one of the parent's layers of management. In the instant case, Plaintiff can demonstrate facts that justify holding Defendant liable for the injuries she suffered as the result of illegal workplace discrimination.

### 1. Defendant is Plaintiff's Employer Because Defendant and BET Have Common Ownership

On the prong of "common ownership or financial control," probative evidence that the parent employs the subsidiary's employees for purposes of liability for workplace discrimination may be found if the "parent . . . handled the subsidiary's payroll." See, Id. at 62 (citing to Johnson v. Flowers Indus., Inc., 814 F.2d 978, 981 (4th Cir. 1987); Armbruster v. Quinn, 711 F.2d 1332, 1338 (6th Cir. 1983). Here, Defendant does indeed

---

[2] Plaintiff must point out, in all fairness, that ultimately the Richard plaintiffs lost on summary judgment on the merits of their claims, but prevailed to the end on the issue who was their "employer."

handle the payroll, and issues Plaintiff's paystubs every pay period.  See, Exhibit 1.  In addition to the fact that Defendant is the sole owner of its BET enterprise, and they have common ownership, insofar as Defendant is the whole owner of BET.  This, too, is a factor in Plaintiff's favor.  On this prong, the weight of the evidence is clearly in support of Plaintiff's argument that Defendant is her employer.

Moreover, Defendant held control over Plaintiff's payroll while simultaneously allowing Plaintiff access to the payroll system through an intranet server that Defendant controls.  On June 25, 2004, Defendant issued to Plaintiff and all of its other BET employees a memorandum directing them to their earnings statements at https://employeedocs.viacom.com.  An alternate address of https://employeedocsweb.viacom.com was given for employees needing access while away from work.  See, Exhibit 6, Payroll Memorandum, at 1.  Clearly, Defendant holds significant financial control over BET and its payroll, and on this prong Plaintiff is very much Defendant's employee.

### 2. Defendant is Plaintiff's Employer Because Defendant Exercises Substantial Control Over BET's Labor Relations

Defendant has, repeatedly, told Plaintiff that she is its employee.  Defendant has done this through communications from its officers to its employees, and, most tellingly, through its exercise of control over BET's employment policies, procedures, and compliance.  Plaintiff was, in fact, able to retrieve copies of Defendant's own documentation from her own personnel file, the originals of which are in Defendant's control, in which Defendant states quite baldly that Plaintiff is its employee.  As Plaintiff states in her Affidavit:

6

> On an annual basis, Human Resources conducts what they call "Human Resource Training." At that time all associates are required to renew their disclosure statements and sign the Viacom handbook as Viacom employees. Upon the signing of the documents, the originals are sent to Viacom and copies are placed in the associate's human resources file. Viacom also sent email to its employees regarding its business conduct statement. I was able to secure copies out of my personnel file of previously signed "Viacom Business Conduct Statement" that I signed as a Viacom employee.

> Exhibit 5, Woodland Aff., at ¶¶ 3-4.

As Plaintiff attests, Defendant exercises such a degree of control over this process that it retains the original documents itself. Yet Defendant failed to address the obvious implications of this control in its Motion to Dismiss. On the question of whether or not Defendant had any incentive to omit this evidence, of which it had possession and control, the text of the documents themselves is instructive. Defendant plainly wants Plaintiff to think of herself as "a Viacom employee." From the Viacom Business Conduct Statement Plaintiff was required by Defendant to sign and certify:

> Dear Directors and Employees,
>
> . . .
>
> What Is The Purpose of This Statement?
>
> The purpose of this statement is to bring together in one convenient place a summary of the most important policies and rules that apply to Viacom, its employees and the members of its Board of Directors and to help us maintain a lawful, honest and ethical environment in our company.
>
> To Whom Do the Rules and Policies in this Statement Apply?
>
> The rules and policies referenced in this Statement apply to all members of the Board of Directors of Viacom Inc. ("directors") and to all employees of the Viacom family of companies worldwide including those employed on a temporary, freelance or per diem basis. When we refer to "your Company," that means the business unit you work for, or Viacom Inc. if you are a director or employee of the Viacom Inc. corporate offices. When we refer to Viacom, that includes your business unit as well as Viacom Inc.

> Exhibit 2, Business Conduct Manual, at pp. 2-3.

Defendant has told Plaintiff that when it refers to "Viacom," that also means "BET." By referring to BET as Viacom and addressing Plaintiff as "Employee," Defendant clearly established an employer-employee relationship with Plaintiff. Defendant cannot seriously argue that the use of its own name in the Business Conduct Manual in reference to its "employees" somehow makes it not an "employer" of the people it calls "employees." Such an argument would strain the logical capacity of the English language, and allow Defendant to avoid liability for the illegal discriminatory acts of its employees. Indeed, the Manual states else where that Plaintiff will be "carrying out Viacom's business" (Business Conduct Manual, at 10), and that "Viacom has a 'zero tolerance' policy for sexual harassment" (Business Conduct Manual at 15). Clearly, with respect both to payroll and business conduct, Defendant is pulling the strings through its BET business unit, exercising sufficient control over Plaintiff's workplace to justify liability to her on a sexual harassment claim. Clearly, BET exists as just another layer of management in Defendant's structure; Defendant exercises control over the labor relations of its business units; and Defendant is liable to Plaintiff on her claim.

      **3.    Defendant is Plaintiff's Employer Because Defendant and BET Have Interrelated Operations and Defendant and BET Have Common Management**

On October 10, 2002, Plaintiff was required to sign a certification of Defendant's Business Conduct Statement by Defendant. This statement reads:

> In order to promote an ethical environment, Viacom requires that all employees complete and return this form. In may cases, simple disclosure is adequate to avoid an impermissible conflict of interest. **Please note that all exceptions since your last certification of this type are to be listed, even if previously approved**.

> The word "Company" in this certification form refers to the business unit you work for, or Viacom if you work for Viacom's corporate offices. Each Viacom division has determined the amount that constitutes "minimal value" for purposes of the Conflict of Interest policy in the Statement. Please contact A.B. Cruz III, BET Vice President & Deputy General Counsel, at (202) 603-2085 or Quinton Bowman, BET Vice President, Human Resources, at (202) 603-2376 if you have a question about this or any other aspect of this certification form.
>
> **EMPLOYEE CERTIFICATION:**
>
> **I certify that I have received, carefully read and understood the Viacom Business Conduct Statement and in particular the Conflicts of Interest policy at pages 1 and 2. I also certify, to the best of my knowledge, that I have fully complied with each of the policies in the Statement during the period January 1, 2000 through the date of this certification and that I do not have anything to disclose under the Conflicts of Interest or other policies, except for items I have previously disclosed in a form of this type and any exceptions listed below. I agree to follow each of the policies in the Statement while I work for the Company and to promptly disclose anything these policies require me to disclose.**

Exhibit 2, Business Conduct Manual, at pp. 2-3.

Plaintiff duly signed and executed this document, as Defendant required of all its employees. Exhibit 3, Employee Certification, at 1. On November 30, 2004, Defendant required Plaintiff to refresh her certification, which Plaintiff, as Defendant's employee, did. Exhibit 3, Employee Certification, at 2-3. The language is starkly clear: "Viacom" requires that all its "employees" certify Viacom's business conduct manual. Viacom, not BET, retained the originals of this statement. Exhibit 5, Woodland Aff., ¶ 3.

On April 14, 2005, Plaintiff received the Moonves E-Mail in her corporate email account. Exhibit 4, Moonves E-Mail. This email is from Leslie Moonves and Tom Freston, Defendant's Co-Presidents and Co-Chief Operating Officers. It is frankly addressed to "All Viacom Employees." As an employee of Defendant, Plaintiff quite naturally received a copy from BET Human Resources Vice President Quinton Bowman. As Mr. Bowman passed this message through unedited, he obviously held no position of

corporate or business independence between Plaintiff and Defendant.  This, most tellingly, demonstrates the degree of interrelatedness of business operations between Defendant and its employees in the BET business unit, which includes Plaintiff. Nowhere is there any contraindication that Plaintiff is not in the group of "All Viacom Employees."  As Defendant communicates with Plaintiff as its employee, tells her she is its employee, withholds her taxes and pays her as an employee, Plaintiff is justified in holding Defendant liable, as her employer, for her claims of illegal workforce discrimination.

On each of the prongs of the "interrelated enterprise test," Plaintiff has evidence to outweigh Defendant's baldly asserted claim that BET is indispensable as a defendant in this matter.  Plaintiff takes the view that she has more-than-ample documentation of her status as an employee of Defendant, and BET is not an indispensable party to her claim against the Defendant.  If Defendant has issues that it wishes to contest against BET that arise from Plaintiff's allegations, Defendant is welcome to litigate those issues with BET.  Plaintiff knows who is responsible for and liable for the illegal discriminatory actions of Defendant's employees, and she seeks to hold Defendant liable for them.  She has presented an impressive documentary record to buttress her belief that Defendant is the party liable to her.  Defendant's motion must, therefore, be denied.

B.  **Because Defendant is Plaintiff's Employer, BET Is Not Indispensable to This Litigation and Plaintiff's Lawsuit Cannot Be Dismissed Pursuant to Fed. R. Civ. P. 19**

A first-year law student learns that Fed. R. Civ. P. requires a two-part analysis to determine whether dismissal is appropriate.[3] In the instant case, Defendant argues that Plaintiff cannot have "complete relief" for her claims of discrimination. This is utter nonsense, and Defendant has advanced no statutory or case law to support such a contention. Plaintiff can certainly have "complete relief" from Defendant, her employer, for her discrimination claims. Indeed, Defendant concedes that in some circumstances, parent corporations are liable for the discriminatory acts of their wholly-owned subsidiaries. Defense counsel, has chosen to ignore the facts in this matter and their necessary implications in the law of this judicial circuit. Defense counsel would like to draw the corporate veil over the eyes of this Court by omitting relevant facts and case law from its motion to dismiss. Defendant must not be allowed to get away with this. Defendant would like to ignore the circumstances that would tend to prove that it and BET are appropriately treated as the same company in this matter. Plaintiff's complaint must withstand such a challenge.

Defendant further argues, again without any factual or logical support, that relief cannot be shaped to avoid prejudice to BET. Defendant pays its BET employees; Defendant can thus pay the legal claims of its BET employees for their injuries due to illegal workplace discrimination. This would afford Plaintiff complete relief, exhaust her

---

[3] A first-year law student also learns to cite first to the law of the judicial circuit, and to the law of other judicial circuits only when no on-point case law can be found. Defense counsel cites to the law of the 9th and 10th circuits in support of its notion that "the doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees." Was there really no case in the D.C. Circuit espousing this concept? Plaintiff's counsel finds this difficult to believe. In any event, if this concept has, in fact, never been adopted by the D.C. Circuit or lower court, Defense counsel offers no argument advancing reasons why this circuit should adopt this holding. Moreover, defense counsel has failed to cite to existing law of this circuit that is on point, i.e., the Richard and St. Francis Xavier cases.

11

claims against Defendant on these facts, and entirely adjudicate the subject matter of her well-pled complaint. Defendant has shown no reason in fact or law why its other BET employees would not be available through the discovery and trial phases of this litigation to defend against Plaintiff's lawsuit. This is an action by one of Defendant's employees that is based on acts done by some of Defendant's other employees. Defendant has made it clear that BET employees *are* Viacom employees.

Relief granted to Plaintiff on her claims will prejudice neither Defendant nor its BET management layer. Judgment rendered on Plaintiff's claim will be wholly adequate to compensate Plaintiff's injuries caused by Defendant, and Plaintiff will have no further claim for relief against Defendant or its business unit after judgment. There is thus little merit to any of Defendant's Rule 19 argument. Dismissal is inappropriate, and Defendant's motion must be denied.

**II.     TO GRANT DEFENDANT'S MOTION AT THIS PHASE IN LITIGATION WOULD PERMIT DEFENDANT TO UNDERCUT SIGNIFICANTLY BINDING PRINCIPLES ESPOUSED BY THE 2002 SUPREME COURT IN THE *SWIERKIEWICZ* CASE, ESSENTIALLY REQUIRING PLAINTIFF'S PRIMA FACIE CASE AS PLED TO SURVIVE SUMMARY JUDGMENT**

Defendant's Motion to Dismiss seeks dismissal as to the entirety of Plaintiff's well-pled Complaint. Such a heightened pleading standard is *inapplicable* at the pleading phase.

The Supreme Court has explained that, "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." Swierkiewicz v. Sorema, 534 U.S. 506, 511 (2002). The Court also explained that "[t]he prima facie case under *McDonnell Douglas* is an evidentiary standard, not a

12

pleading requirement" and "[t]his Court has never indicated that the requirements for establishing a *prima facie* case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." Id.

Moreover, "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a *prima facie case* in order to survive summary judgment." The "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and dispose of unmeritorious claims" later in the litigation process. Swierkiewicz, 534 U.S. at 512. The binding authority of Swierkiewicz clearly dictates that the *McDonnell Douglas* standard is applicable as an evidentiary tool, rather than a guideline for pleadings. And because "proper utilization of the summary judgment tool facilitates the orderly process of judicial administration," (Nader v. de Toledano, 408 A.2d 31 (D.C. App.1979); D.C. Super.Ct.Civ. Pro.R. 56), it is imperative that its misapplication be avoided in order to maintain the integrity of the law.

Plaintiff has provided "a short and plain statement of the claim showing that [s]he is entitled to relief." Swierkiewicz, 534 U.S. at 511. Granting Defendant's motion at this stage in litigation would allow Defendant, in practical terms, to circumvent the mandates espoused by a unanimous Supreme Court. Justice Thomas, writing for the Court, explained: "[t]his simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512.

The Court's rationale envisions a timeline, with a Plaintiff's requirement to meet notice pleading standards in the early stages, discovery in the middle stages up to and

13

including depositions of plaintiffs and any motions for summary judgment once unmeritorious claims are evinced through fruitful discovery. Justice Thomas wrote: "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." Id.

Plaintiff has pled a Complaint sufficient to meet the standards set forth in Federal Rule of Civil Procedure 8 (a)(2). Swierkiewicz makes clear that dismissal and summary judgment are appropriate after a Plaintiff who has had sufficient opportunity for discovery has no evidence to support an essential element of her case. As this action has not yet moved beyond the notice pleading phase, Defendant's motion to dismiss must be treated as a premature motion for summary judgment and must be denied.

## CONCLUSION

Because Defendant exercises substantial financial control over Plaintiff's business unit, Defendant exercises control over the labor operations of Plaintiff's business unit, and because Defendant and Plaintiff's business unit have common management and interrelated operations, Defendant and Plaintiff's business unit must, by the law of this Court, be treated as the same company. Defendant is therefore liable to Plaintiff for her discrimination claims. Plaintiff's business unit is but another layer of management between Defendant and Plaintiff, not an indispensable party, as Defendant has mistakenly asserted. Defendant has access to the discovery materials required to defend against Plaintiff's lawsuit. Defendant has made no argument, nor could, that its defense against Plaintiff's claims would not also be a defense by BET. Certainly, judgment rendered on

the merits of Plaintiff's claims would exhaust her remedies on the nucleus of operative facts in her complaint.

It is clear that, at best, Defendant has missed the boat and failed to cite the correct test of law in this circuit and has likewise failed to address the material, relevant facts already in its possession.  At worst, Defendant's motion could be seen as an intentional suppression of applicable case law and suppression of material fact.  It is certain that defense counsel is a seasoned litigator with a prestigious law firm, so this fundamental failure to address the law and the facts relevant to the matter appears almost astounding.  Whatever the explanation, it is abundantly clear that production of this material by Defendant would have exposed the frivolous nature if its motion.[4]

For all of these reasons, Plaintiff prays this Honorable Court DENY Defendant's Motion to Dismiss.

Respectfully submitted,

_____/s/_____
Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD   20772
(301) 599-7620
(301) 599-7623 (fax)
Bar No. MD 14639

*Counsel for Plaintiff*

Dated: January 31, 2006

---

[4] Plaintiff's counsel finds it interesting, to say the least, that Defendant's motion to dismiss was only filed *after* Plaintiff propounded discovery requests upon Defendant.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          :
**ANTOINETTE WOODLAND,**                  :
                                          :
      Plaintiff,              :     Case No.: 1:05-cv-01611-PLF
                                          :
v.                                        :
                                          :
**VIACOM, INC.,**                         :
                                          :
      Defendant.              :
_____ :

## **ORDER**

UPON CONSIDERATION of Plaintiff's Opposition, any Reply thereto, and in the interests of justice, it is, this _____ day of _____, 2006, hereby

ORDERED, that Defendant's Motion to Dismiss shall be, and hereby is, DENIED.

                                                             _____
                                                             United States District Judge