IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTOINETTE WOODLAND<br>　　　　Plaintiff,<br><br>v.<br><br>VIACOM INC.,<br>　　　　Defendant. | Case No. 1:05-cv-01611 (PLF/JMF) |

**DEFENDANT VIACOM'S STATEMENT
OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE[1]**

Pursuant to Local Civil Rules 7(h) and 56.1, Defendant Viacom Inc. ("Viacom") submits the following Statement of Material Facts as to Which There is No Genuine Issue ("SMF") in support of its Motion for Summary Judgment:

**Viacom's Relation to BET**

1. Viacom is a media conglomerate with various interests in cable and satellite television networks and movie production and distribution. Declaration of Betty A. Panarella ("Panarella Decl.") at 3, attached as Exhibit A.

2. Viacom is headquartered in New York City, with offices around the world, including in Los Angeles, California and the United Kingdom. Viacom has approximately 10,000 employees worldwide, 7,000 of whom are located in the United States. Viacom is comprised of several hundred subsidiary companies, including BET Holdings LLC. Black Entertainment Television LLC ("BET") is a subsidiary of BET Holdings LLC. Panarella Decl. at 3.

---

[1] For the sole purpose of its motion for summary judgment, Viacom does not dispute the facts asserted in Ms. Woodland's Complaint and deposition and referenced herein. Viacom does not waive its right to dispute such facts in further proceedings should its motion be denied.

3. BET is a media and entertainment company, whose primary business is operating cable networks targeted towards African-American and urban audiences. Panarella Decl. at 4.

4. BET is headquartered in Washington, D.C., with offices in New York City, Chicago, and Los Angeles, California. BET has approximately 417 employees. BET Holdings LLC became a wholly-owned subsidiary of Viacom in 2001. Panarella Decl. at 4.

5. Viacom and BET are separate legal entities and, among other things, have separate tax identification numbers. Viacom does not manage the day-to-day operations of BET, nor does it manage BET's labor and employee relations or make any day-to-day employment decisions on behalf of BET. Panarella Decl. at 5, 6, and 8.

6. Viacom is a media conglomerate (with approximately 10,000 employees worldwide) headquartered in New York City. In contrast, BET primarily operates cable networks and is headquartered in Washington, D.C. (with approximately 417 employees). BET Holdings LLC is an independent subsidiary of Viacom. BET is a subsidiary of BET Holdings LLC. BET operates in a separate location from Viacom, and with separate management and employees. There is no common equipment and no common telephone numbers between Viacom and BET. Panarella Decl. at 3, 4, and 6. BET and Viacom have separate bank accounts, and BET has its own accounting and finance departments. Panarella Decl. at 6.

7. Viacom and BET utilize a computerized payroll processing system called "Infinium." This system electronically processes individual compensation, including making any withholdings or deductions. Viacom and BET have separate payroll departments. All payroll information, including hours worked, pay rate, deductions and withholdings, for BET employees is input into the Infinium system solely by BET's payroll department and/or BET's managers or

supervisors. The pay stubs or pay checks issued to BET employees contain the BET corporate logo. BET is responsible for its own payroll expenditures. Panarella Decl. at 7.

8.      There is no centralized control of labor relations and personnel between Viacom and BET. Viacom does not manage the day-to-day labor relations of BET. Viacom and BET have separate and independent human resources departments. With the exception of a small number of BET senior level executives, BET is solely responsible for determining which employees it hires, whom should be offered jobs, what functions they will perform, and what their terms and conditions of employment shall be. Viacom and BET have separate employee benefits, including separate health and retirement plans. Panarella Decl. at 8.

9.      Viacom played no role in hiring Plaintiff Antoinette Woodland ("Ms. Woodland"), determining what her terms and conditions of employment would be, promoting her, or allegedly demoting her. In addition, Viacom played no role in the day-to-day management of Ms. Woodland. All employment decisions relating to Ms. Woodland were made exclusively by BET in Washington, D.C. Panarella Decl. at 9.

10.     The Viacom Business Conduct Statement ("BCS") is a general corporate code of conduct that applies to Viacom employees and employees of Viacom's divisions and subsidiaries. BET, not Viacom, is responsible for securing the acknowledgments from BET employees. The BCS sets forth general employment-related policies regarding, among other things, conflicts of interest, illegal discrimination, use of employer resources, and the handling of intellectual property. Many of the policies set forth in the BCS are mandated by law. Panarella Decl. at 10.

11.     In addition to the BCS, BET has its own employment policies. The BCS supplements, but does not supersede, BET's own employment policies. *See* Excerpts of the

Deposition Transcript of Quinton Bowman ("Bowman Dep.") Dep. at 7-8, attached as Exhibit B; Panarella Decl. at 11. BET's policies are set forth in the Black Entertainment Television Regular Employee Handbook. Bowman Dep. at 11.

12. Viacom and BET have some common corporate officers. The officers common to both Viacom and BET do not exercise any day-to-day control over BET's operations or BET's employees. Panarella Decl. at 12. BET has separate and independent management located in Washington, D.C., including its Chairman and CEO, its President and Chief Operations Officer, its Chief Financial Officer, its General Counsel and Chief Administrative Officer, and its Senior Vice President of Human Resources. These individuals and other BET managers and supervisors determine, among other things, staffing, hiring, terminations, discipline and layoffs, and all day-to-day operational, business, and employment decisions. Panarella Decl. at 12.

**Antoinette Woodland's Employment With BET**

13. Ms. Woodland was employed by BET as a Fashion Stylist from 1998 until 2000 at its headquarters in Washington, D.C. *See* Excerpts of the Deposition Transcript of Plaintiff Antoinette Woodland ("Woodland Dep.") at 15-16, attached as Exhibit C.

14. In 2001, Ms. Woodland was employed as an Occupant Services Coordinator by Jones Lang LaSalle, which had a contract with BET to provide property management services at BET's headquarters in Washington, D.C. Woodland Dep. at 17. In her role as Occupant Services Coordinator for Jones Lang LaSalle, Ms. Woodland reported to Troy Saunders, Senior Director of Corporate Administrative Operations for BET. Woodland Dep. at 18, 30.

15. In October of 2001, BET decided to terminate its contract with Jones Lang LaSalle. Subsequently, Mr. Saunders offered Ms. Woodland a position as Occupant Services Manager for BET. According to Ms. Woodland, Mr. Saunders, Mr. Marchant, and Quinton Bowman, Senior

Vice President of Human Resources for BET, were the only individuals involved in her hiring as Occupant Services Manager in 2001. Woodland Dep. at 30-32. At her deposition, Ms. Woodland admitted that "No one from Viacom was involved in that hiring …." Woodland Dep. at 37.

16. In June of 2002, Ms. Woodland was promoted to the position of Property Manager for BET at its headquarters in Washington, D.C. According to Ms. Woodland, the only individuals involved in her promotion to Property Manager were Mr. Saunders, Mr. Marchant and the BET Human Resources Department. Woodland Dep. at 32-33. At her deposition, Ms. Woodland admitted that Viacom did not play a part in her promotion to Property Manager. Woodland Dep. at 49.

17. In May or June of 2003, Ms. Woodland was promoted to the position of Senior Manager of Corporate Planning and Asset Management Operations for BET at its Washington, D.C. headquarters. According to Ms. Woodland, the only individuals involved in her promotion were Mr. Saunders, Mr. Marchant, and Mr. Bowman. Woodland Dep. at 21-23, 34.

18. In connection with her promotion to Senior Manager of Corporate Planning and Asset Management Operations, Ms. Woodland received a $20,000 raise. According to Ms. Woodland, Mr. Bowman received authorization for Ms. Woodland's raise from Debra Lee, BET's CEO. Woodland Dep. at 117-18.

19. As the Senior Manager of Corporate Planning and Asset Management Operations, Ms. Woodland reported to Mr. Saunders. Woodland Dep. at 197. According to Ms. Woodland, she was responsible, among other things, for: managing the day-to-day operations on the BET campus; the interior design of the BET campus; coordinating logistical/facility concerns for the BET remote sites; coordinating the national relocation of departments; providing logistical

support during awards shows; vendor management; contract negotiations; purchasing office furniture and equipment; space management; construction management; marketing; Help Desk management.  Compl. at 45.  In addition, according to Ms. Woodland, she supervised many employees, including her receptionist, the cafeteria staff, the security team, engineering team, the warehouse manager, the mail room team, the records management manager, the document center, and the office managers at BET's remote locations.  Woodland Dep. at 195.

20. Beginning in 2001, Ms. Woodland signed a form acknowledging that she received the BCS every year.  Woodland Dep. at 40.  In addition, from 2001 to 2004, Ms. Woodland received annual training on the BCS, which was conducted by BET Human Resources representatives, including Mr. Bowman and Shelley Johnson.  Ms. Woodland does not know whether Viacom representatives ever conducted training on the BCS at BET's headquarters.  Woodland Dep. at 42-45.

21. In 2003, Ms. Woodland received 500 shares of Viacom stock based on her performance.  Compl. ¶ 14.  According to Ms. Woodland, Mr. Saunders and Mr. Marchant were responsible for recommending her for the stock award.  Woodland Dep. at 99, 103.

22. In July of 2004, Mr. Saunders, Ms. Woodland's direct supervisor, resigned from BET.  Compl. ¶ 15.  Following Mr. Saunders' resignation, Edward Gilmore became the Senior Director of Corporate Administrative Operations for BET.  Compl. ¶ 17.

23. According to Ms. Woodland, in October of 2004, BET hired Carol Holland and Samuel Williams to work in its Corporate Administrative Operations department.  Ms. Holland's title was Director of Corporate Administrative Operations.  Mr. Williams' title was Senior Manager of Logistics.  Woodland Dep. at 24, 179.

24. Mr. Williams reported directly to Ms. Holland. Ms. Holland reported directly to Mr. Gilmore. Woodland Dep. at 25.

**Ms. Woodland Alleges That She Was Demoted**

25. According to Ms. Woodland, in October of 2004, she attended a meeting with Mr. Marchant, Mr. Bowman, Mr. Gilmore, and other employees of BET's Corporate Administrative Operations department. Woodland Dep. at 180.

26. Ms. Woodland alleges that, at the meeting, Mr. Marchant distributed revised organizational charts for the Corporate Administrative Operations department. According to Ms. Woodland, her position was listed as "Logistics Coordinator" on the chart. Woodland Dep. at 179-80.

27. According to Ms. Woodland, Mr. Marchant, Mr. Bowman, and Mr. Gilmore were responsible for her title change. Woodland Dep. at 221.

28. According to Ms. Woodland, after the meeting in October of 2004, her job duties changed. She claims that, after the meeting, her sole duties were to order coffee for the BET campus and answer the BET help desk telephone line. Woodland Dep. at 26, 194-95; Compl. ¶ 47. In addition, Ms. Woodland alleges that she no longer supervised any employees and was excluded from management meetings. Woodland Dep. 196-97, 269.

29. After October 2004, Ms. Woodland reported directly to Mr. Williams. Woodland Dep. at 24. Ms. Woodland claims that Mr. Williams took over all of her former duties. Woodland Dep. at 212, 244.

30. Ms. Woodland admits that after the October 2004 meeting, her pay and benefits remained the same. Woodland Dep. at 178.

31. Ms. Woodland never filed a formal or informal complaint with BET alleging that her demotion was based on her gender. Woodland Dep. at 234-35.

32. Since August 2006, Ms. Woodland's title has been Senior Manager of Corporate Planning and Asset Management Operations. Woodland Dep. at 250.

Dated: November 1, 2007                     Respectfully submitted,

                                            _____/s/_____
                                            Grace E. Speights (D.C. Bar No. 392091)
                                            John S. Ferrer (D.C. Bar No. 489679)
                                            Morgan, Lewis & Bockius LLP
                                            1111 Pennsylvania Ave., N.W.
                                            Washington, D.C. 20004
                                            (202) 739-3000
                                            (202) 739-3001 (Fax)
                                            *Attorneys for Defendant Viacom Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of November, 2007, a copy of the foregoing Defendant Viacom Inc.'s Statement of Material Facts As To Which There Is No Genuine Issue was served via the electronic case filing (CM/ECF) system and first-class mail on Counsel for Plaintiff as follows:

>Jimmy A. Bell, Esq.
>The Law Offices of Jimmy A. Bell, P.C.
>9610 Marlboro Pike
>Upper Marlboro, MD 20772

>_____/s/_____
>John S. Ferrer