## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANTOINETTE WOODLAND | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-cv-01611 (PLF/JMF) |
| | ) | |
| VIACOM INC., | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF DEFENDANT VIACOM INC.'S MOTION FOR SUMMARY JUDGMENT

Grace E. Speights (D.C. Bar No. 392091)
John S. Ferrer (D.C. Bar No. 489679)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 739-3000
(202) 739-3001 (Fax)
*Attorneys for Defendant Viacom Inc.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. 1

FACTUAL SUMMARY ..................................................................................... 4

STANDARD FOR SUMMARY JUDGMENT ................................................... 5

ARGUMENT ..................................................................................................... 6

    A.    Viacom Is Not Plaintiff's Employer, Is Not A Proper Party To This Action, And Therefore Cannot Be Held Liable In This Case............................... 6

        1.    Viacom and BET Are Not A Single Employer ........................................ 7

        2.    Viacom and BET Are Not Joint Employers............................................. 15

        3.    Viacom and BET Are Not Agents of One Another................................. 16

    B.    In the Alternative, Plaintiff Cannot Establish A *Prima Facie* Case of Gender Discrimination ....................................................................... 17

        1.    Plaintiff Cannot Establish That She Suffered An Adverse Employment Action................................................................................. 18

        2.    Even Assuming Plaintiff Could Establish An Adverse Employment Action, She Cannot Show That It Raised An Inference of Discrimination ....................................................................................... 20

CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 5

*Armbuster v. Quinn*, 711 F.2d 1332 (6th Cir. 1983) ................................................. 6, 13

*Bialczak v. State Of Ohio Dep't of Taxation*, No. 99-3841, 2000 WL 1888789 (6th Cir. Dec. 22, 2000) ....................................................................................... 19

*Boone v. Goldin*, 178 F.3d 253 (4th Cir. 1999) ........................................................... 19

*Brown v. Brody*, 199 F.3d 446 (D.C. Cir. 1999) ........................................................... 18

*Brown v. Brody*, No. 95-298, 1997 U.S. Dist. LEXIS 18425 (D.D.C. 1997) .................. 22

*Brug v. Nat'l Coalition for the Homeless*, 45 F. Supp. 2d 33 (D.D.C. 1999) .................. 6

*Coles v. Harvey*, 471 F. Supp. 2d 46 (D.D.C. 2007) ................................................. 15, 16

*Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir. 1995) ............................. 13

*East v. Graphic Arts Industry Joint Pension Trust*, No. 95-450, 1995 WL 577808 (D.D.C. July 14, 1995) .......................................................................................... 7

*EEOC v. St. Francis Xavier Parochial Sch.*, 928 F. Supp. 29 (D.D.C. 1996) .........7, 8, 14

*Flaherty v. Gas Research Institute*, 31 F.3d 451 (7th Cir. 1994) ................................. 19

*Forkkio v. Powell*, 306 F.3d 1127 (D.C. Cir. 2002) ...........................................18, 19, 20

*Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir. 1993) ...................................6, 9, 12, 14

*Goldberg v. B. Green and Co.*, 836 F.2d 845 (4th Cir. 1988)...................................20, 22

*Greason v. Southeastern R.R. Assoc. Bureaus*, 650 F. Supp. 1 (N.D. Ga. 1986) ............. 8

*Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105 (D.D.C. 2004).................................... 5

*Harris v. Palmetto Title, Inc.*, 835 F. Supp. 263 (D.S.C. 1983) .................................... 14

*Hayslett v. Perry*, 332 F. Supp. 2d 93 (D.D.C. 2004).................................................... 21

*Hunter v. Ark Restaurants Corp.*, 3 F. Supp. 2d 9 (D.D.C. 1998) .............................. 8, 14

*Local No. 627, Int'l Union of Operating Eng'rs v. NLRB*, 518 F.2d 1040 (D.C. Cir. 1975) ............................................................................................... 7

*Miller v. County of Rockingham*, No. 5:06CV00053, 2007 U.S. Dist. LEXIS 58157 (W.D.Va. Aug. 9, 2007) ................................................................ 8

*Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549 (D.C. Cir. 1997) ............................ 19

*NLRB v. Browning-Ferris Indus.*, 691 F.2d 1117 (3d Cir. 1982) .................................. 15

*Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131 (D.D.C. 2004) ...................... 18

*Richard v. Bell Atlantic Corp.*, 167 F. Supp. 2d 34 (D.D.C. 2001) ............................... 12

*Sandvik v. United Rentals, Inc.*, No. 04-1057, 2005 U.S. Dist. LEXIS 10719 (D. Minn. June 2, 2005) ................................................................................. 20

*Swallows v. Barnes & Noble Stores, Inc.*, 128 F.3d 990 (6th Cir. 1997) ..... 6, 7, 10, 11, 15

*Tewelde v. Albright*, 89 F. Supp. 2d 12 (D.D.C. 2000) ........................... 7, 8, 9, 10, 13, 14

*Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir. 1983) ............................................. 10

*Tr. of the Operation Eng'r Pension Trust Fund v. G.C. Wallace, Inc.*, No. 87-2668, 1988 WL 97778 (9th Cir. 1988) ...................................................... 9

*United Telegraph Workers v. NLRB*, 571 F.2d 665 (D.C. Cir. 1978) ........................... 14

*Watson v. Gulf & Western Indus.*, 650 F.2d 990 (9th Cir. 1981) .................................... 6

*Williams v. City of Montgomery*, 742 F.2d 586 (11th Cir. 1984) .................................. 16

*Zuurbier v. MedStar Health, Inc.*, 306 F. Supp. 2d 1 (D.D.C. 2004 ................................ 5

## STATE CASES

*Arthur Young & Co. v. Sutherland*, 631 A.2d 354 (D.C. 1993) ...................................... 18

*Blackman v. Visiting Nurses Ass'n*, 694 A.2d 865 (D.C. 1997) ...................................... 21

*McManus v. MCI Commc'ns Corp.*, 748 A.2d 949 (D.C. 2000) ............................... 21, 22

**STATE STATUTES**

District of Columbia Human Rights Act, D.C. Code Ann. § 2-1402.11(a)(1)
(2007) ................................................................................................................ 1, 16

**FEDERAL RULES**

Federal Rule of Civil Procedure 56(c) ....................................................................... 1, 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————— )
ANTOINETTE WOODLAND )
        Plaintiff, )
         )
v. )      Case No. 1:05-cv-01611 (PLF/JMF)
         )
VIACOM INC., )
        Defendant. )
         )
———————————————————— )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT VIACOM INC.'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rules 7(h) and 56.1 and Federal Rule of Civil Procedure 56(c),

Defendant Viacom Inc. ("Viacom") submits this Memorandum of Points and Authorities in

support of its Motion for Summary Judgment on all claims set forth in Plaintiff Antoinette

Woodland's ("Ms. Woodland's") Complaint, and the accompanying Statement of Material Facts

As To Which There Is No Genuine Dispute ("SMF").  For the reasons explained below, this

Court should enter summary judgment against Ms. Woodland on her claim of gender

discrimination under the District of Columbia Human Rights Act, D.C. Code §§ 2.1401-1403.17

("DCHRA").

**I.        INTRODUCTION**

Viacom, the sole named Defendant in this lawsuit, is a media conglomerate

headquartered in New York City.  SMF ¶ 1.  BET Holdings LLC is a subsidiary company of

Viacom.  Black Entertainment Television LLC ("BET") is a subsidiary company of BET

Holdings LLC.  SMF ¶ 2.  BET is a media and entertainment company, whose primary business

is operating cable networks targeted to African American and urban audiences.  SMF ¶ 3.  BET

is headquartered in Washington, D.C. and employs approximately 417 employees.  SMF ¶ 4.
BET has an independent management and human resources staff, who make the day-to-day
employment decisions at BET.  SMF ¶ 8.  Viacom does not manage the day-to-day operations of
BET, nor does it manage BET's labor and employee relations or make day-to-day labor and
employment-related decisions on behalf of BET.  SMF ¶ 5, 8.

In her Complaint, Plaintiff alleges that she "was an employee of Defendant Viacom."
Complaint ("Compl.") ¶ 6.  However, a plain reading of Ms. Woodland's Complaint illustrates
that BET, not Viacom, is Ms. Woodland's actual employer.  *See, e.g.,* Compl. ¶ 8 (Plaintiff was
hired "as a Property Manager for BET"); ¶ 19 (Plaintiff was promoted to the position of Senior
Logistics Manager for BET); ¶ 45 (As a Senior Manager, Plaintiff managed the day-to-day
operations on the BET campus, handled interior design of the BET campus, and coordinated
logistical/facility concerns for BET remote sites); and ¶ 78 (Plaintiff was informed that "BET
had formally withdrawn any performance evaluations regarding Plaintiff").  Moreover, in the
parties' Joint Report filed with this Court on November 9, 2005, Ms. Woodland admitted that she
actually "is employed by Defendant's subsidiary, Black Entertainment Television ("BET")."  *See*
Report of Local 16.3 Conference.  Although Ms. Woodland has conceded that BET is her actual
employer, Ms. Woodland has sued Viacom for gender discrimination.

On January 3, 2006, Viacom filed a Motion to Dismiss for failure to join BET, an
indispensable party, under Fed. R. Civ. P. 19.[1]  The Court denied Viacom's motion on the

---

[1] Viacom notes that it first raised the separate employer issue with Ms. Woodland after receiving her Complaint.
Counsel for Viacom notified Ms. Woodland's counsel that "such a claim can only be brought, if at all, against Ms.
Woodland's actual employer, Black Entertainment Television," and requested that she dismiss her lawsuit before
Viacom was required to file a responsive pleading.  *Woodland v. Viacom Inc.*, No. 05-1611, slip op. at 3 (D.D.C.
Nov. 8, 2006).  Ms. Woodland declined, and Viacom subsequently filed its answer to her Complaint.  *Id.*  In
addition, Viacom reiterated its position that Ms. Woodland brought this claim against the wrong party in the parties'
Report of Local Rule 16.3 Conference.  *See* Report of Local 16.3 Conference.

ground that it had not met its burden of showing that BET and Viacom were sufficiently separate to preclude Viacom's liability. The Court noted, however, that Ms. Woodland's evidence that Viacom is her employer – namely, that her paychecks are issued by the "Viacom Payroll Department in New York City, although they also bear the BET logo, and that she was required to sign the Viacom employee handbook – may not be sufficient to prove at trial that Viacom can actually be held liable for the allegedly discriminatory acts of Ms. Woodland's superiors." *Woodland v. Viacom Inc.*, No. 05-1611, slip op. at 5 (D.D.C. Nov. 8, 2006).

We are now at the summary judgment stage of this litigation. Discovery has concluded. Ms. Woodland was given a full and fair opportunity to explore whether Viacom is her employer, or otherwise can be held liable for the alleged employment actions of BET. As set forth below, Viacom respectfully submits that Ms. Woodland has failed to establish that Viacom is her employer. In this regard, there is insufficient evidence of any single employer, joint employer, or agency relationship between Viacom and BET and, therefore, summary judgment should be granted to Viacom as a matter of law.

Even assuming, *arguendo*, that Viacom could be held liable for BET's alleged unlawful employment actions – which Viacom maintains it cannot – Ms. Woodland's claim of gender discrimination fails as a matter of law. Assuming that Ms. Woodland's version of events is true, as we must for summary judgment, her evidence is insufficient to survive summary judgment. As detailed in this Memorandum and Statement of Material Facts As to Which There Is No Genuine Dispute, Ms. Woodland has no legal or factual basis to proceed under her claim. Accordingly, Viacom is entitled to summary judgment on Ms. Woodland's claim of gender discrimination.

## II.    FACTUAL SUMMARY

Ms. Woodland began her employment with BET as the Occupant Services Manager at its Washington, D.C. headquarters in October 2001. SMF ¶ 15. At all times material to Ms. Woodland's Complaint, she worked for BET at its Washington, D.C. headquarters. SMF ¶¶ 13-32. Ms. Woodland is currently employed by BET as the Senior Manager of Corporate Planning and Asset Management Operations at its Washington, D.C. headquarters. SMF ¶ 32.

At all times material to Ms. Woodland's Complaint, BET Holdings LLC has been a subsidiary company of Viacom. SMF ¶ 4. BET Holdings LLC became a subsidiary company of Viacom in 2001. *Id*. BET is a subsidiary of BET Holdings LLC. SMF ¶¶ 2, 6. Viacom and BET are separate legal entities with separate tax identification numbers. SMF ¶ 5. Viacom and BET have separate operations, locations, managers, and employees. SMF ¶ 6. BET and Viacom have separate bank accounts, and BET has its own accounting and finance departments. *Id*. Viacom, which is headquartered in New York, does not manage the day-to-day operations of BET. *Id*. There is no common equipment and no common telephone numbers. *Id*.

There is no centralized control of labor relations or personnel between Viacom and BET. SMF ¶ 8. Viacom does not manage the day-to-day labor relations of BET. *Id*. Viacom and BET have separate and independent human resources departments. With the exception of a small number of BET senior level executives, BET is solely responsible for determining which employees it hires, whom should be offered jobs, what functions they will perform, and what their terms and conditions will be. *Id*. Viacom and BET have separate employee benefits, including separate health and retirement plans. *Id*.

According to Ms. Woodland, in about October 2004, she suffered a "de facto" demotion at BET. Ms. Woodland claims that her title was changed from "Senior Manager" to "Logistics

Coordinator," her job duties were reduced, and she was excluded from management meetings. SMF ¶¶ 26, 28. Ms. Woodland alleges that her former job duties were given to a male, Samuel Williams, who was hired as Senior Manager of Logistics of BET in about October 2004. SMF ¶ 29. Ms. Woodland reported directly to Mr. Williams after he was hired. *Id.* Ms. Woodland's pay and benefits did not change after her alleged demotion. SMF ¶ 30. Further, according to Ms. Woodland, the decision regarding her alleged demotion was made solely by BET employees. SMF ¶ 27.

### III.    STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment is generally appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 112 (D.D.C. 2004). In determining "materiality," the trial court looks to "the substantive law of the claims at issue to determine whether a fact is 'material.'" *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue about a material fact is "genuine" only if it is "one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Id.* (citations omitted).

Although the court must "draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true," nevertheless, "the non-moving party must establish more than '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position.'" *Id.* (internal citations omitted). The non-moving party cannot rely upon mere conclusory allegations, speculation, or denials, but set forth specific facts demonstrating that there is a genuine issue for trial. *See id.*; *see also Anderson*, 477 U.S. at 256. Accordingly, "[i]f

the evidence is merely colorable…, or is not significantly probative…summary judgment may be granted." *Gustave-Schmidt*, 360 F. Supp. 2d at 112 (citation omitted).

### III.     ARGUMENT

**A.     Viacom Is Not Plaintiff's Employer, Is Not a Proper Party to This Action, And Therefore Cannot Be Held Liable In This Case.**

In order to hold Viacom liable under the DCHRA, Ms. Woodland must show that Viacom was her "employer" within the meaning of that statute. *See Zuurbier v. MedStar Health, Inc.*, 306 F.Supp.2d 1, 6 (D.D.C. 2004) (stating that only an "employer" may be held liable for violations of the DCHRA). It is undisputed that BET, not Viacom, was Ms. Woodland's employer. *See* Report of Local 16.3 Conference. The doctrine of limited liability of corporations creates a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993) (emphasis added); *see also Watson v. Gulf & Western Indus.*, 650 F.2d 990 (9th Cir. 1981) ("in the absence of special circumstances, a parent corporation is not liable for the Title VII violations of its wholly owed subsidiary"). While this Court has noted that employers should not be permitted to circumvent the strictures of anti-discrimination laws through clever legal maneuvering, such as the deceptive creation of two separate entities, Ms. Woodland has made no allegation, nor can she, that Viacom or BET has used the corporate form to shield either party from liability for employment discrimination. *See Brug v. Nat'l Coalition for the Homeless*, 45 F. Supp. 2d 33, 39 (D.D.C. 1999). Indeed, Ms. Woodland cannot establish that such "extraordinary circumstances" exist here so as to justify finding that Viacom is her employer. *Frank*, 3 F.3d at 1362.

"Although a direct employment relationship provides the usual basis for liability under [discrimination laws], courts have fashioned various doctrines by which a defendant that does

not directly employ a plaintiff may still be considered an 'employer'...." *Swallows v. Barnes &*
*Noble Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997).  Specifically, in one approach, courts
"examine whether two entities are so interrelated that they may be considered a 'single
employer' or an 'integrated enterprise.'"  *Id.*  In another approach, "courts consider whether one
defendant has control over another company's employee's sufficient to show that the two
companies are acting as a 'joint employer' of those employees."  *Id.*  "A third approach examines
whether the … entity that took the allegedly illegal employment action was acting as the agent of
another company, which may then be liable as the plaintiffs' employer."  *Id.*  In this case, Ms.
Woodland has made no allegation, nor can she establish, that there is a single employer, joint
employer, or agency relationship between Viacom and BET, or that Viacom made any of the
employment decisions at issue here.  As such, Viacom cannot be held liable in this case.

## 1.    Viacom and BET Are Not A Single Employer.

Single employer status is characterized by the absence of an "arm's length relationship
found among the integrated companies."  *Local No. 627, Int'l Union of Operating Eng'rs v.*
*NLRB*, 518 F.2d 1040, 1046 (D.C. Cir. 1975).  To determine whether two or more companies
should be regarded as a single/integrated employer, courts examine the following four factors:
(1) interrelation of operations; (2) centralized control of labor relations and personnel; (3)
common management; and (4) common ownership and financial control.  *See Tewelde v.*
*Albright*, 89 F. Supp. 2d 12, 17 (D.D.C. 2000).  No single factor is conclusive, and all of the
factors need not be met.  *Id*. at 17 n. 6.  "Although the absence or presence of any single factor is
not conclusive, control over the elements of labor relations is a central concern."  *EEOC v. St.*
*Francis Xavier Parochial Sch.*, 928 F. Supp. 29, 33 (D.D.C. 1996).  Moreover, "[i]n the absence
of centralized control of labor relations, interrelation of operations and common management

must be substantial in order to find that separate entities constitute a single employer." *East v. Graphic Arts Industry Joint Pension Trust*, No. 95-450, 1995 WL 577808 (D.D.C. July 14, 1995). Furthermore, Ms. Woodland must "make a substantial showing to warrant a finding of single employer status. There must be 'sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer.'" *St. Francis Xavier*, 928 F. Supp. at 33 (quoting *Armbuster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir. 1983)). In this case, Ms. Woodland cannot make a "substantial showing" that Viacom and BET are a single employer.

a.       **Interrelatedness of Operations.**

There is little or no evidence of interrelation of operations between Viacom and BET. In this case, Viacom and BET do not have common management, common employees, common equipment or combined telephone numbers. In addition, BET and Viacom have separate bank accounts, and BET has its own accounting and finance departments. SMF ¶¶ 5, 6.

Although Viacom and BET both utilize a common computerized payroll processing system (called "Infinium"), this is insufficient evidence of "interrelatedness of operations." SMF ¶ 7. In this regard, where combined payroll processing is the only indicia of interrelatedness, courts have declined to find that the operations of two corporations are a single employer. *See Miller v. County of Rockingham*, No. 5:06CV00053, 2007 U.S. Dist. LEXIS 58157, *23 (W.D.Va. Aug. 9, 2007) (where County, when serving as Park Authority's fiscal agent, issued pay checks for Park Authority's employees, there was no single employer relationship where County was fully reimbursed each month for payroll expenditures); *Hunter v. Ark Restaurants Corp.*, 3 F. Supp. 2d 9, 18 (D.D.C. 1998) (finding no interrelatedness where there was a common

source of check printing but subsidiary maintained separate bank account from parent); *Greason v. Southeastern R.R. Assoc. Bureaus*, 650 F. Supp. 1, 4 (N.D. Ga. 1986) (holding that defendant fiscal agent was not plaintiff's employer, where although fiscal agent provided accounting services and issued paychecks, fiscal agent did not use its own funds for these activities and did not control, manage, supervise, or otherwise affect plaintiff's employer's labor practices).

Here, Viacom and BET have separate payroll departments. All payroll information, including hours worked, pay rate, deductions and withholdings, for BET employees is input into the Infinium system solely by BET's payroll department and/or BET's managers or supervisors. The pay stubs and pay checks issued to BET employees contain the BET corporate logo. Moreover, BET is responsible for all of its payroll costs. SMF ¶ 7. As such, that Viacom and BET utilize a common payroll processing system is insufficient to establish a single employer relationship.

### b.    Centralized Control of Labor Relations.

Significantly, Ms. Woodland cannot establish that BET's labor relations are controlled by Viacom. Whether there is centralized control of labor relations is "usually accorded greater weight" than the other "single employer" factors. *Tewelde*, 89 F. Supp. 2d at 17-18. "The 'control' required to meet the centralized control of labor relations is 'actual and active control of day-to-day labor practices.'" *Id.* at 18 (citations omitted). Moreover, "[t]he critical question is, '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Frank*, 3 F.3d at 1363 (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983); *Tewelde*, 89 F. Supp. 2d at 19 ("The focal point of the Court's inquiry … is 'the degree of control an entity has over the adverse employment decision on which the Title VII suit is based.").

In this case, there has been no showing that Viacom either controls or has a policy of engaging in BET's personnel matters.  At all relevant times, with the exception of a small number of BET senior level executives, BET solely determined – and continues to solely determine – which employees to hire, who should be offered jobs, what functions they will perform, and what their terms and conditions of employment shall be.  SMF ¶ 8.  Viacom does not have or exercise any day-to-day role in hiring, firing, disciplining, or determining the terms and conditions of employment for BET's employees.  *Id.*  Such decisions are left entirely to BET's Human Resources Department and BET supervisors.  *Id.  See Tewelde*, 89 F. Supp. 2d at 17 (finding no centralized control of labor relations where one company did not "hire, fire, set wages, working hours, working conditions, or fringe benefits" of other company's employees"); *Swallows*, 128 F.3d at 995 (no common control of labor relations where only one entity "had the power to hire and fire employees").

Notably, with respect to the critical inquiry – "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination," Ms. Woodland has failed to present any evidence that Viacom played any role in the alleged employment actions that serve as the basis of her claim.  Indeed, Ms. Woodland admitted at her deposition, that the decisions to hire, promote, and allegedly demote her were made exclusively by BET employees at BET's headquarters in Washington, D.C.  *Frank*, 3 F.3d at 1363; *see also* SMF at ¶¶ 15, 16, 17, 27.  Specifically, Ms. Woodland stated that only Byron Marchant, BET's General Counsel and Chief Administrative Officer, and Troy Saunders, BET's former Director of Corporate Administrative Operations, were involved in her hiring by BET as Occupant Services Manager in 2001.  SMF ¶ 15.  In addition, Ms. Woodland admitted that only Mr. Marchant, Mr. Saunders, and Quinton Bowman, BET's Senior Vice President of Human Resources, were responsible for

her subsequent promotions to Property Manager in 2002 and Senior Manager in 2003. SMF ¶¶ 16, 17. Most importantly, Ms. Woodland admitted that only Mr. Marchant, Mr. Bowman, and Edward Gilmore, former Senior Director of Corporate Administrative Operations at BET, were responsible for her alleged demotion to Logistics Coordinator in 2004. SMF ¶ 27.

Ms. Woodland has not presented any evidence, nor can she, that any Viacom employee was actively involved, or even aware of, her hiring, promotion, and alleged demotion. *See also Swallows*, 128 F.3d at 995 (no evidence that defendant "controlled the decision to fire plaintiffs, or made any other final decision with regard to their employment); *Tewelde*, 89 F. Supp. 2d at 19 (finding no single employer status where plaintiff conceded that she was hired and dismissed by one entity and not the other). Indeed, Viacom had no involvement in the day-to-day management of Ms. Woodland. SMF ¶ 9.

Instead of presenting evidence that Viacom has actively managed BET's Human Resource function, Ms. Woodland contends that because Viacom promulgates the Viacom Business Conduct Statement ("BCS"), which applies to Viacom employees and the employees of Viacom's divisions and subsidiaries, there is centralized control of Viacom and BET's labor relations. The BCS is a general corporate code of conduct that sets forth general employment-related policies that apply to the employees of Viacom and to the employees of Viacom's divisions and subsidiaries. SMF ¶ 10. However, many of these policies are mandated by law. BET, not Viacom, is responsible for securing from BET employees acknowledgements that they have received the BCS. In addition to the BCS, BET has its own employment-related policies, which are set forth in the Black Entertainment Television Regular Employee Handbook and that apply solely to BET employees. The BCS supplements, but does not supersede, BET's own employment-related policies. SMF ¶ 11.

In its Memorandum Opinion and Order denying Viacom's Motion to Dismiss, this Court stated that the BCS "lays out general company-wide policies on matters like ethics, workplace harassment and email." *Woodland v. Viacom Inc.*, No. 05-1611, slip op. at 5 (D.D.C. Nov. 8, 2006). Significantly, "[a] parent's broad general policy statements regarding employment matters are not enough to satisfy" the centralized control of labor relations prong of the single employer test. *Frank*, 3 F.3d at 1363. In *Frank*, the Tenth Circuit found that the fact that the parent company's equal opportunity policies and identity statement – which set out general guidelines for fair treatment of subsidiary employees – applied to its subsidiary failed to create a material factual dispute with regard to the control prong because they were "broad, general policies that in no way evidence an attempt by [the parent company] to exercise day-to-day control over employment decisions." *Id.*

Furthermore, even if the BCS constitutes more than a broad and general policy – which Viacom maintains it is not – shared employment policies, standing alone, are insufficient to establish centralized control of labor relations. *See, e.g., Richard v. Bell Atlantic Corp, Inc.*, 976 F. Supp. 40, 43 (D.D.C. 1997) (finding centralized control of labor relations where parent implemented a comprehensive listing of regimented rules regarding the evaluation of employees that subsidiaries were required to follow; parent directly participated in the evaluation of its subsidiary employees' performance, parent developed and implemented allegedly discriminatory testing procedures used by its subsidiaries; and parent influenced and controlled subsidiary employees' transfer and promotion opportunities). As such, the BCS is insufficient evidence of

Viacom's "actual and active control" of BET's day-to-day labor practices. *Tewelde*, 89 F. Supp.

2d at 18 (citations omitted).[2]

Accordingly, Ms. Woodland has failed to present evidence that Viacom controlled

employment decisions at BET in the manner found by courts to establish single employer

relationships. *See, e.g., Armbuster*, 711 F.2d at 1338-39 (parent company controlled labor

relations of subsidiary where parent hired subsidiary president and plant manager, approved

plaintiff's hiring and was involved in her termination); *Cook v. Arrowsmith Shelburne, Inc.*, 69

F.3d 1235, 1241 (2d Cir. 1995) (parent company approved subsidiary's personnel status reports

and all its major employment decisions, and employee of parent hired and fired plaintiff, an

employee of subsidiary). Therefore, Ms. Woodland cannot establish there is centralized labor

relations in this case, which is the factor courts generally consider to be the most critical in the

single employer analysis.[3]

### c.    Common Management.

Plaintiff also cannot establish that Viacom's management "exercise[s] control over the

daily operations and employment practices" of BET.[4] *Hunter*, 3 F. Supp. at 18. BET's day-to-

day activities are overseen and managed by its own management in Washington, D.C., which

includes its Chairman and CEO, President and Chief Operations Officer, Chief Financial Officer,

---

[2] Ms. Woodland may also attempt to point to the 500 shares of Viacom stock she received in 2003 based on her performance at BET as evidence of Viacom and BET's centralized labor relations. Ms. Woodland stated at her deposition, however, that Mr. Saunders and Mr. Marchant, both BET employees, were solely responsible for recommending her for the stock award. SMF ¶ 21. Thus, this is insufficient evidence that Viacom had "actual and active control" of BET's day-to-day labor practices. *Tewelde*, 89 F. Supp. 2d at 18.

[3] Notably, because Viacom has no control over the labor relations of BET, should there somehow be a judgment against Viacom in this matter, Viacom could not provide the complete relief Ms. Woodland is seeking, i.e., Viacom cannot reinstate her to a prior position or alleged job duties at BET.

[4] Although Viacom and BET have some common corporate officers, the officers common to both Viacom and BET do not "effectively control the daily operation" of BET, and Ms. Woodland cannot establish otherwise. *Hunter*, 3 F. Supp. 2d at 18.

General Counsel and Chief Administrative Officer, and Senior Vice President of Human Resources. SMF ¶ 12. BET's management in Washington, D.C. determines, among other things, staffing levels, whether new hires, terminations, disciplines, or layoffs are necessary, and all day-to-day operational, business, and employment decisions. *Id. See Hunter*, 3 F. Supp. at 18; *Tewelde*, 89 F. Supp. 2d at 18; *Harris v. Palmetto Title, Inc.*, 835 F. Supp. 263, 268 (D.S.C. 1993) (finding that record did not support finding of single employer status where different managers "controlled the daily operations and employment practices" of the entities). As such, where, as here, different managers control the daily operations and employment practices at each entity, a plaintiff, such as Ms. Woodland, cannot establish that "one corporation ran the other in a direct, hands-on fashion, establishing the operating practices and management practices." *St. Francis*, 928 F. Supp. at 34.

### d.    Common Ownership or Financial Control.

Although BET Holdings LLC is a wholly-owned subsidiary of Viacom, (SMF ¶ 4), "[i]n the absence of other factors, … 'common ownership is not determinative where common control is not shown.'" *Hunter*, 3 F. Supp. 2d at 19 (quoting *United Telegraph Workers v. NLRB*, 571 F.2d 665, 667 (D.C. Cir. 1978)). "This is particularly true since common ownership of subsidiaries by a parent corporation is a characteristic of a corporate enterprise." *Id. See also Frank*, 3 F.3d at 1364 (common ownership, "standing alone, can never be sufficient to establish parent liability"). Therefore, that Viacom is the parent of BET Holdings LLC is simply not enough to hold Viacom liable here.

Accordingly, based on the foregoing, Ms. Woodland has not met her burden of making a "substantial showing" that Viacom and BET constitute a single employer.

### 2.     Viacom and BET Are Not Joint Employers.

Ms. Woodland also cannot establish that Viacom and BET are joint employers.  Two or more businesses are "joint employers" of a single workforce when "'it can be shown that they share or co-determine those matters governing essential terms and conditions of employment.'" *Coles v. Harvey*, 471 F. Supp. 2d 46, 50 (D.D.C. 2007) (quoting *NLRB v. Browning-Ferris Industries*, 691 F.2d 1117, 1124 (3d Cir. 1982)).  Whether a joint employer relationship exists depends upon such factors as "the supervision of the employees' day to day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, [and] issuance of operating instructions."  *Swallows*, 128 F.3d at 993.

There is insufficient evidence that Viacom and BET co-determine the essential terms and conditions of employment for BET employees.  As detailed above, Viacom does not manage the day-to-day labor and employment-related decisions of BET.  BET has its own human resources department, which makes its own personnel decisions with respect to, among other things, hirings, wages and benefits, and layoffs.  SMF ¶ 8.  Moreover, Viacom does not supervise the day-to-day activities of BET's employees and does not exercise day-to-day control over the hiring, firing, work assignments, or disciplining of BET's workforce.  *Id.*  Indeed, as discussed above, Ms. Woodland has not alleged, nor can she, that any Viacom employees were involved in the decisions to hire, promote, or allegedly demote her**.**  SMF  ¶¶ 15, 16, 17, 27.

Although Ms. Woodland may point to the BCS as evidence of a "joint employer" relationship, as detailed above, the BCS is a general corporate code of conduct that sets forth general employment-related policies that apply to Viacom employees and employees of Viacom's divisions and subsidiaries.  SMF ¶ 9.  BET is responsible for securing acknowledgements of the BCS from BET employees; and BET has its own employment-related

policies, which are set forth in the Black Entertainment Television Regular Employee Handbook and that apply solely to BET employees. SMF ¶¶ 9, 10. Thus, the BCS does not suffice to show that BET and Viacom "share or co-determine those matters governing essential terms and conditions of employment." *Coles*, 471 F. Supp. 2d at 50.[5]

Accordingly, Viacom and BET are not joint employers and Plaintiff cannot establish otherwise.

### 3.    Viacom and BET Are Not Agents Of One Another.

Based on the same reasons as set forth above, Ms. Woodland cannot establish an "agency" relationship between Viacom and BET. "An agent is one who consents to act on behalf of another and subject to the other's control." *Swallows*, 128 F.3d at 996 (citing Restatement (Second) of Agency § 1 (1958)). *See also Williams v. City of Montgomery*, 742 F.2d 586 (11th Cir. 1984) ("'Where the employer has delegated control of some of the employer's traditional rights, such as hiring or firing, to a third party, the third party has been found to be an employer by virtue of the agency relationship.") (internal quotations omitted). In this case, Ms. Woodland has not alleged, nor can she, that there was a delegation of authority of control over BET's employees from BET to Viacom. It is clear that BET has not delegated its employment decisions to Viacom, and therefore Viacom cannot be construed as BET's agent. In addition, Ms. Woodland cannot establish that Viacom directed BET to take the alleged unlawful employment actions at issue here.

---

[5] In addition, Ms. Woodland may attempt to rely on the 500 shares of Viacom stock she received in 2003 based on her performance at BET as evidence that BET and Viacom are joint employers. As discussed above, however, Ms. Woodland stated at her deposition that Mr. Saunders and Mr. Marchant, both BET employees, were responsible for recommending her for the stock award. *Id.* Thus, Ms. Woodland's stock award does not suffice to show that Viacom and BET "share or co-determine those matters governing essential terms and conditions of employment." *Coles*, 471 F. Supp. 2d at 50.

**B.    In the Alternative, Plaintiff Cannot Establish A *Prima Facie* Case of Gender Discrimination.**

As set forth above, it is Viacom's position that it is not Ms. Woodland's employer, it is not the proper defendant in this lawsuit, and therefore that summary judgment should be granted to it as a matter of law on that basis. In the alternative, should this Court find that Viacom somehow can be held liable for the alleged employment actions of BET – which Viacom contends it cannot – Viacom submits that summary judgment should be granted to it on the ground that Ms. Woodland cannot prove a *prima facie* case of gender discrimination.

Ms. Woodland's complaint asserts that BET's conduct constituted unlawful gender discrimination within the meaning of the DCHRA. *See* Compl. ¶ 86. The DCHRA prohibits employers from discriminating with regard to the terms and conditions of employment based upon an employee's membership in a protected category (which includes, among other things, gender). D.C. Code § 2-1402.11(a)(1) (2007). In interpreting the DCHRA, D.C. courts have generally looked to cases from the federal courts interpreting Title VII of the Civil Rights Act of 1964 and other federal anti-discrimination laws. *See, e.g., Regan v. Grill Concepts-DC, Inc.*, 338 F. Supp. 2d 131, 134 (D.D.C. 2004); *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 n. 17 (D.C. 1993).

To state a *prima facie* case of disparate treatment on the basis of gender, Ms. Woodland must establish that (1) she was a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999). To the extent that Ms. Woodland alleges that she was demoted based on her gender, she has failed to establish (1) that she suffered an adverse employment action; and (2) that such adverse employment action gives rise to an

inference of discrimination.  Therefore, Viacom is entitled to summary judgment as a matter of law.

### 1.    Plaintiff Cannot Establish That She Suffered An Adverse Employment Action.

"[A]n employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  *Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) (stating that plaintiff could not establish an adverse action on the basis that the reassignment deprived him of prestige).  "Purely subjective injuries, such as dissatisfaction with a reassignment or public humiliation or loss of reputation are not adverse actions."  *Id.*

Here, Ms. Woodland asserts that she experienced a "de facto demotion" because her job title was allegedly changed from "Senior Manager" to "Logistics Coordinator," her job duties were significantly reduced, and she was excluded from management meetings.  SMF ¶¶ 26, 28; Compl. ¶¶ 41-47.  Notably, it is undisputed that Ms. Woodland's pay and benefits remained the same after her alleged demotion.  SMF ¶ 30.

Even if Ms. Woodland's job title changed as she alleges, "the loss of an existing title … would not satisfy [the adverse action] element of the prima facie case."  *Flaherty v. Gas Research Institute*, 31 F.3d 451, 457 (7th Cir. 1994) (finding no adverse action where plaintiff's change in title from principal scientist to senior project manager was coupled with new reporting relationship that required him to report to a former subordinate).  Thus, assuming that Ms. Woodland's title was changed from "Senior Manager" to "Logistics Coordinator," such a change is insufficient, standing alone, to establish an adverse action.

Ms. Woodland also cannot establish that she suffered an adverse employment action based on her assertion that her job duties changed. Where, as here, a reassignment or reorganization does not affect a plaintiff's pay or benefits, Ms. Woodland's claim of an adverse employment action must "rest on a significant change in [her] job responsibilities." *Forkkio*, 306 F.3d at 1131 (finding no adverse action because plaintiff's substantive responsibilities were not reduced where he was given additional functions to perform, he continued to supervise his former staff members, and he was given additional staff); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) ("changes in assignments and work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes"); *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) ("[R]eassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect on h[im]."); *Bialczak v. State*, No. 99-3841, 2000 WL 1888789, at *2 (6th Cir. Dec. 22, 2000) ("Reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims … For an employment action to be materially adverse, it must significantly diminish one's material responsibilities."). Because Ms. Woodland cannot present sufficient evidence that her job duties were reduced, she cannot prove a *prima face* case of gender discrimination.

Ms. Woodland's only admissible evidence that her job duties changed is her self-serving testimony to that effect, which is insufficient to establish an adverse employment action. *Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (recognizing that plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of discrimination"); *Sandvik v. United Rentals, Inc.*, No. 04-1057, 2005 U.S. Dist. LEXIS 10719, at * 33 n. 11 (D. Minn. June 2, 2005) ("With respect to [plaintiff's] testimony that she was stripped

of all her job duties, her unsubstantiated, conclusory allegation is insufficient to withstand summary judgment."). As such, Ms. Woodland cannot establish that she suffered a "significant change" in her job responsibilities, and therefore cannot prove that she suffered an adverse employment action.

Moreover, Ms. Woodland's blanket claim that she was excluded from management meetings, even if taken as true, does not amount to an adverse action. In this regard, being excluded from management meetings after reassignment or reorganization is "not sufficiently significant" to amount to "materially adverse consequences." *Forkkio*, 306 F.3d at 1131 (internal quotations omitted); *Hayslett v. Perry*, 332 F. Supp. 2d 93, 205 (D.D.C. 2004) ("Plaintiff has identified no specific meetings, nor has she demonstrated how her alleged exclusion from unspecified meetings had any adverse impact on her employment terms and conditions or caused any objectively tangible harm. Accordingly, she has failed to establish an adverse action."). Therefore, based on the above, Ms. Woodland has failed to establish that she suffered any adverse employment action.

> **2.    Even Assuming Plaintiff Could Establish An Adverse Employment Action, She Cannot Show That It Raised An Inference of Discrimination.**

Even assuming that Ms. Woodland could establish that she suffered an adverse employment action, she cannot demonstrate an inference of discrimination. To prove an inference of discrimination, Ms. Woodland must show either: (a) that she was "'replaced by a person outside of her protected class, or if the position has remained vacant, that the employer has continued to solicit applications for the position;'" or (b) "'that other similarly situated employees ... were instead treated more favorably.'" *McManus v. MCI Commc'ns Corp.*, 748 A.2d 949, 954 (D.C. 2000), *cert. denied,* 531 U.S. 1183 (2001) (*quoting Blackman v. Visiting Nurses Ass'n*, 694 A.2d 865, 868-69 (D.C. 1997)).

Here, Ms. Woodland attempts to satisfy this element of her *prima facie* case by alleging that Samuel Williams, a male, was placed in her former position after she was demoted.  SMF ¶ 29; Compl. ¶¶ 41, 85.  However, her only admissible evidence in support of this allegation is her own testimony.  Ms. Woodland's unsupported "conjecture that there was disparate treatment [without] evidence" cannot establish a *prima facie* claim of discrimination.  *Brown v. Brody*, No. 95-298, 1997 U.S. Dist. LEXIS 18425 at *9 (D.D.C. 1997), *aff'd,* 199 F.3d 446, 452 (D.C. Cir. 1999); *see also Goldberg v. B. Green and Co.*, 836 F.2d at 848.  Thus, because she cannot provide sufficient evidence to show that she was replaced by an individual outside her protected class, Ms. Woodland's claim of gender discrimination must fail.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Viacom respectfully submits that its Motion for Summary Judgment should be granted in its entirety.

Dated: November 1, 2007                  Respectfully submitted,

                                                                    /s/
                                         _____
                                         Grace E. Speights (D.C. Bar No. 392091)
                                         John S. Ferrer (D.C. Bar No. 489679)
                                         Morgan, Lewis & Bockius LLP
                                         1111 Pennsylvania Ave., N.W.
                                         Washington, D.C.  20004
                                         (202) 739-3000
                                         (202) 739-3001 (Fax)
                                         *Attorneys for Defendant Viacom Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of November, 2007, a copy of the foregoing

Defendant Viacom Inc.'s Motion for Summary Judgment, Memorandum of Points and

Authorities in Support Thereof, and proposed Order, were served via the electronic case filing

(CM/ECF) system and first-class mail on Counsel for Plaintiff as follows:

> Jimmy A. Bell, Esq.
> The Law Offices of Jimmy A. Bell, P.C.
> 9610 Marlboro Pike
> Upper Marlboro, MD 20772


> _____/s/_____
> John S. Ferrer