**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**ANTOINETTE WOODLAND,**

Plaintiff,

v.

**VIACOM, INC.,**

Defendant.

Case No.: 1:05-cv-01611-PLF

# PLAINTIFF ANTIONETTE WOODLAND'S STATEMENT OF MATERIAL FACTS IN DISPUTE

COMES NOW the Plaintiff, Antionette Woodland, by and through her counsel, the Law Office of Jimmy A. Bell, P.C., and Jimmy A. Bell, Esq., and respectfully submits her Statement of Material Facts in Dispute.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

1. When Defendant acquired its BET business unit, Defendant took over paying Plaintiff and withholding her Federal income taxes and other deductions as employers are required by law to do. See, Exhibit 1 of Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff's Paystub Processed by Defendant's Payroll ("Paystub").

2. When it acquired BET, Defendant issued Plaintiff, as Defendant's employee, a Business Conduct Statement that Plaintiff was required to certify as Defendant's employee. See, Exhibit 2 of Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff's Copy of Defendant's Business Conduct Manual ("Business Conduct Manual"); see also, Exhibit 3, Viacom

Business Conduct Statement Employee Certification ("Employee Certification").

3. With regard to business compliance and ethics, Defendant exercises such significant control over BET that BET Vice President Quinton Bowman passed through unedited, to all employees of Defendant's BET unit, a "Viacom Memo" on that subject. See, Exhibit 4, Plaintiff's Copy of E-mail from Tom Freston & Leslie Moonves to All of Defendant's Employees ("Moonves E-mail").

4. Defendant not only required its BET employees to sign, acknowledge and attend training regarding its corporate policies and operating procedures, but also conducted audits to ensure that BET was in compliance with Defendant's policies and procedures.

5. In Plaintiff's sworn deposition testimony, Plaintiff explained that:

A. Because they were. They were starting to make all of our -- put all of our systems -- to modernize all the systems and put them on computers, different software systems, so that they have access to them and payroll was probably one of the first ones that they did.

Q. What other systems?

A. Human Resources. Human Resources did not used to use any type of software system. They were operating sort of like a mom and pop shop and with the purchase or us being acquired by the Viacom

family, they started getting all types of Infinium, all types of different systems in order to be linked with the Viacom family.

Q. What is Infinium?

A. It's a software, a Human Resources software system that ties the two together. We can input information here in D.C. and New York has access -- can access that same information.

51

They also conduct audits. We are audited a couple of times a year. Human Resources was just recently audited by Viacom where they come down and search the files and make sure that the paperwork is intact.

Q. Anything else?

A. No.

Q. You stated that you believe the payroll system -- what is the payroll system, do you know?

A. I do not. I don't deal with the payroll, but I know that it is input and it goes to 1515 Broadway.

Q. How do you know that?

A. Because I was involved in putting up the machines around the campus to make sure that it would go. I was involved in making sure that people were testing the machines to make sure that someone at Viacom could read them.

    Q. What do you mean read them?
A. We have cards. Whenever someone comes in, they would swipe in. Typically that information
52
would have been used for BET. When the campuses became connected, now if they swipe in Viacom has that information and they are using that information for payroll.
Q. What type of card are you referring to?
A. An identification card. Each associate has an identification card with a number on it and for hourly associates, they swipe in and that's how they are paid.
Q. How do you know Viacom gets this information?
A. Because I was a part of the testing. I was asked by BET Human Resources to have a few of the people test their cards and the reason they gave me was because Viacom were now -- it was now on the Viacom payroll system and we need to be sure Viacom can read those cards. Exhibit 2 at 50:3-21; 51; 52:1-17.

6. Quinton Bowman, Vice President of Human Resources and Administration for BET, admitted that Defendant required BET to acknowledge, sign and abide by its policies, as well as conducting audits and require compliance with areas that Defendant found to be in non-compliance with its procedures.

7. Mr. Bowman explained that:

16

Q. And can you tell me -- what is "Infinium"?
A. Infinium is another web based system, or at least computer based system, that Viacom and BET uses to process payroll.
Q. Was it -- do employees have an option to utilize the old system?
A. No.
Q. It's a requirement to go through this new system?
A. Yes.
Q. And it's a system that Viacom required the individuals at BET to utilize?
A. Viacom required BET to utilize the system.
Q. And does this system take out the taxes?
A. Yes.
Q. What about 401Ks?
A. It processes all of the payroll. It pays people. It does withholding. It does 401K. It

17

does all the things you associate with a payroll system. Exhibit 1 at 16:4-21; 17:1-2.

8. Mr. Bowman further explained that once Defendant acquired BET and implemented its payroll and other systems, BET did not have a choice in regards to whether or not they would utilize Defendant's systems, BET was required by Defendant to do so. Id. at 16:4-21.

9. Defendant further issued stock options to Plaintiff for performance as Defendant's employee and a letter from Defendant to Plaintiff regarding said stock options. Exhibit 3; Exhibit 4.

10. Defendant exercised such control over BET, that it paid Counsel's legal fees in the instant case and thereafter, required that BET reimburse Defendant for legal fees paid on behalf of BET by Defendant. Exhibit 1 at 26:1; 27-30; 31:1-15.

11. Plaintiff was demoted from Senior Manager to Logistics Coordinator at the request of Mr. Gilmore. Exhibit 5 at 2 – 4.

12. Plaintiff's supervisory responsibilities were taken away from her when she was demoted to Logistics Coordinator and given to a person outside of Plaintiff's protected class, namely, Samuel Williams, a male. Id.

13. Plaintiff was required to adhere to procedures regarding reimbursement and petty cash that persons outside of Plaintiff's protected class were not required to follow. Id.

14. The circumstances surrounding Plaintiff's demotion give rise to an inference of illegal discrimination as Mr. Gilmore, who was instrumental in Plaintiff's demotion, was known to make derogatory comments regarding women, treated Plaintiff differently than persons outside her protected class, and received complaints regarding discriminatory treatment from women other than Plaintiff. Id.

Respectfully submitted,

___________/s/______________

Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
(301) 599-7620
(301) 599-7623 (fax)
Bar No. MD 14639

*Counsel for Plaintiff*