IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANTOINETTE WOODLAND<br>　　　　Plaintiff, | )<br>)<br>)<br>) |  |
| v. | )<br>) | Case No. 1:05-cv-01611 (PLF/JMF) |
| VIACOM INC.,<br>　　　　Defendant. | )<br>)<br>)<br>)<br>) |  |

**DEFENDANT VIACOM INC.'S REPLY IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Viacom Inc. ("Viacom" or "Defendant"), by and through its undersigned counsel, respectfully submits this Reply in further support of its Motion for Summary Judgment, and in support thereof states as follows:

## I.　INTRODUCTION

In her Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp."), Plaintiff Antoinette Woodland ("Ms. Woodland") fails to create a genuine issue of <u>material</u> fact sufficient to defeat summary judgment.[1] She unsuccessfully attempts to create a genuine dispute of fact by offering a Statement of Material Facts In Dispute which: (1) does not address Viacom's statement of facts; (2) presents facts that are not in dispute and/or are not material; (3) offers legal conclusions rather than facts; and (4) offers facts that are unsupported, factually inaccurate, and/or in direct conflict with Ms. Woodland's proffered evidence.[2]

---

[1] Viacom notes that Ms. Woodland's 48-page Opposition exceeded the 45-page limit set forth in Local Rule 7(e).

[2] Viacom's response to Ms. Woodland's Statement of Material Facts In Dispute is contained in the accompanying Defendant Viacom Inc.'s Response to Plaintiff Antoinette Woodland's Statement of Facts In Dispute.

Furthermore, Ms. Woodland fails to present evidence sufficient to establish that Viacom and Black Entertainment Television LLC ("BET"), Ms. Woodland's employer, constitute a single employer, or that Viacom can otherwise be held liable in this case.[3] Most significantly, there is no evidence that Viacom had control over BET's labor relations. Undisputed evidence, including Ms. Woodland's own testimony, clearly reveals that Viacom played no role in the alleged decision to demote her. Because the undisputed facts demonstrate that Viacom and BET are not a single employer (or joint employer or agents of one another) and that Viacom was not a decision-maker regarding the alleged adverse employment action at issue here, Viacom is entitled to summary judgment as a matter of law.

Assuming, *arguendo*, that Viacom and BET are a single employer, or that Viacom can otherwise be held liable for the alleged employment actions of BET – which Viacom maintains that it is not – Viacom is entitled to summary judgment because Ms. Woodland has not established a *prima facie* case of gender discrimination.

## II.   ARGUMENT

### A.   Viacom Is Not Foreclosed From Arguing That It Is Not Ms. Woodland's Employer.

Contrary to Plaintiff's assertions, Viacom is not foreclosed from arguing that it is not Ms. Woodland's employer, and therefore cannot be held liable in this case. In her Opposition, Ms. Woodland asserts that Viacom cannot reargue that it is not her employer because "[t]his Court has already decided … that Defendant failed to bring forth evidence sufficient to demonstrate that Defendant and BET are separate entities when it denied Defendant's initial Motion to

---

[3] Although Viacom's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment ("Def.'s Mem.") argued that there is no single employer, joint employer, or agency relationship between Viacom and BET, Ms. Woodland's opposition brief addresses only the "single employer" (or "integrated enterprise") doctrine. As such, there is no dispute that Viacom and BET are not joint employers, nor are they agents of one another.

Dismiss…" and that Viacom had "completely failed to produce any additional evidence upon which this Court could rest a differing finding." Pl.'s Opp. at 11. Ms. Woodland's argument is without merit.

On January 3, 2006, Viacom filed a Motion to Dismiss for failure to join BET, a necessary and indispensable party, under Fed. R. Civ. P. 19. While the Court denied Viacom's motion on the ground that it had not provided enough information to support a conclusion that the two companies were sufficiently separate to preclude Viacom's liability at that early stage, the Court did not hold that (nor did it even address whether) Viacom and BET constitute a single employer. *Woodland v. Viacom Inc.*, No. 05-1611, slip op. at 5 (D.D.C. Nov. 8, 2006). As such, the Court's decision regarding Viacom's Motion to Dismiss does not preclude Viacom from now arguing, following the close of discovery, that there is no material factual dispute that it is not Ms. Woodland's employer.

In arguing that Viacom failed to bring forth "any additional evidence upon which this Court could rest a differing finding," Ms. Woodland disregards the declaration of Betty Panarella, Viacom's Senior Vice President of Human Resources, which Viacom proffered in support of its Motion for Summary Judgment. *See* Def.'s Mem., Ex. A. Ms. Panarella's declaration describes the relationship between Viacom and BET in detail and establishes that the two entities do not constitute a single employer. *Id.* Moreover, Ms. Woodland's own deposition testimony establishes that Viacom and BET are not a single employer. *See* Defendant Viacom's Statement of Material Facts As To Which There Is No Genuine Issue ("SMF") ¶¶ 15-18, 21, 27. Thus, Ms. Woodland fails to acknowledge key evidence that demonstrates that Viacom is separate and distinct from BET. Pl.'s Opp. at 11.

**B.      Ms. Woodland Has Failed To Rebut The Undisputed and Material Record Evidence Showing That Viacom And BET Are Not A Single Employer.**

As noted in Viacom's Motion for Summary Judgment, to find a single employer, courts examine: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *See Tewelde v. Albright*, 89 F. Supp. 2d 12, 17 (D.D.C. 2000).[4] Ms. Woodland must "make a *substantial* showing to warrant a finding of single employer status." *EEOC v. St. Francis Xavier Parochial Sch.*, 928 F. Supp. 29, 33 (D.D.C. 1996) (emphasis added). Because Ms. Woodland has not made the requisite substantial showing, Viacom is entitled to summary judgment.

**1.      Ms. Woodland Has Not Established That Viacom Controls BET's Labor Relations.**

As Ms. Woodland correctly points out in her Opposition, "control over the elements of labor relations is a *central concern*" in the single employer analysis. *St. Francis Xavier*, 928 F. Supp. at 33 (emphasis added). Moreover, "[t]he 'control' required to meet the centralized control of labor relations is 'actual and active control of day-to-day labor practices.'" *Tewelde*, 89 F. Supp. 2d at 18 (finding no centralized control of labor relations where one company did not "hire, fire, set wages, working hours, working conditions, or fringe benefits" of other company's employees").

Ms. Woodland's attempt to confuse the Court with immaterial and irrelevant information cannot obscure the fact that the focus on the "control over labor relations" prong is determined by who "made [the] final decision with regard to [the Plaintiff's] employment." *Swallows*, 128 F.3d at 995 (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983) ("the critical question is '[w]hat entity made the final decisions regarding employment matters related to the

---

[4] As noted above, because Ms. Woodland did not contest that Viacom and BET are not joint employers or agents of one another, Viacom does not address those theories in this reply.

person claiming discrimination.'"). In this case, it is undisputed that the decisions to hire Ms. Woodland, promote her, increase her salary, award her with stock options, and allegedly demote her were made solely by BET employees. SMF ¶¶ 15-18, 21, 27. Ms. Woodland's own deposition testimony makes clear that no Viacom employees were involved in making *any* decisions regarding her employment with BET. Specifically, she stated the following at her deposition:

- Only Byron Marchant, BET's General Counsel and Chief Administrative Officer, and Troy Saunders, BET's former Director of Corporate Administrative Operations, were involved in her hiring by BET as Occupant Services Manager in 2001. SMF ¶ 15.

- Only Mr. Marchant, Mr. Saunders, and Quinton Bowman, BET's Senior Vice President of Human Resources, were responsible for her promotion to Property Manager in 2002. SMF ¶16.

- Only Mr. Marchant, Mr. Saunders, and Mr. Bowman were responsible for her promotion to Senior Manager in 2003. SMF ¶ 17.

- Only Mr. Bowman and Debra Lee, BET's CEO, were responsible for awarding her with a $20,000 salary increase in connection with her promotion to Senior Manager. SMF ¶ 18.

- Only Mr. Marchant and Mr. Saunders were responsible for awarding her with 500 Viacom stock options in 2003. SMF ¶ 21.

- Only Mr. Marchant, Mr. Bowman, and Edward Gilmore, former Senior Director of Corporate Administrative Operations at BET, were responsible for her alleged demotion to Logistics Coordinator in 2004. SMF ¶ 27.

Ms. Woodland has provided no evidence that Viacom participated in, or had any control over, the employment decisions at issue here, or any decisions regarding Ms. Woodland's

employment generally. In fact, with the exception of a small number of senior level executives (which Ms. Woodland is not), Viacom does not exercise any role in hiring, firing, disciplining, or determining the terms and conditions of employment for any of BET's employees. SMF ¶ 8. Such decisions are left entirely to BET's Human Resources Department and BET employees' supervisors. Accordingly, Ms. Woodland cannot show that Viacom had common control over BET's labor relations. *See Swallows*, 128 F.3d at 995 (no evidence that defendant "controlled the decision to fire plaintiffs, or made any other final decision with regard to their employment); *Trevino*, 701 F.2d at 404. *See also Tewelde*, 89 F. Supp. 2d at 19 (finding no single employer status where plaintiff conceded that she was hired and dismissed by one entity and not the other).

Notwithstanding her admissions that Viacom had no involvement in any decisions relating to her employment, Ms. Woodland argues in her Opposition that the control over labor relations prong is met because the Viacom Business Conduct Statement ("BCS") applies to BET employees and because Viacom shares a payroll system with BET. Opposition at 18-25.[5] This is, however, insufficient evidence to establish centralized control of labor relations.

The BCS is a general corporate code of conduct that sets forth general employment-related policies that apply to the employees of Viacom and to the employees of Viacom's divisions and subsidiaries. SMF ¶ 10. In fact, in ruling on Viacom's Motion to Dismiss, this Court stated that the BCS "lays out general company-wide policies on matters like ethics, workplace harassment and email." *Woodland v. Viacom Inc.*, No. 05-1611, slip op. at 5 (D.D.C. Nov. 8, 2006) (opining that Plaintiff's evidence that Viacom is her employer may not be sufficient to prove at trial that Viacom can be held liable for any alleged discrimination). Courts

---

[5]  Although Ms. Woodland quotes extensively from the deposition of Mr. Bowman in her Opposition, she failed to quote from Mr. Bowman's corrected and certified testimony. See Quinton Bowman Errata Sheet, attached hereto as Exhibit A. As such, Viacom moves to strike the incorrect testimony of Mr. Bowman cited by Ms. Woodland in her Opposition.

have found that "[a] parent's broad general policy statements regarding employment matters are not enough to satisfy" the centralized control of labor relations prong of the single employer test. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1363 (10th Cir. 1993). Even if, *arguendo*, the BCS constitutes more than a broad, general policy statement, common employment policies, without more, do not establish centralized control of labor relations. *See, e.g., Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1071 (10th Cir. 1998) (even though evidence showed that franchisor's policies were utilized at franchisee's restaurant, existence of such policies was not enough to demonstrate control of labor relations without evidence showing role, if any, franchisor played in implementing policies); *Richard v. Bell Atlantic Corp., Inc.*, 976 F. Supp. 40, 43 (D.D.C. 1997).

Moreover, although employees of Viacom's divisions and subsidiaries are required to acknowledge receipt of the BCS, BET is responsible for securing such acknowledgments. SMF ¶ 10. In addition, BET has its own employment policies, contained in the Black Entertainment Television Regular Employee Handbook, which apply only to BET employees and which are not superseded by the BCS. SMF ¶ 11.

Viacom and BET do share a payroll processing system called Infinium, However, the companies' simultaneous use of a payroll processing system is immaterial to the determination of who controls labor relations. Viacom and BET have separate payroll departments. SMF ¶ 7. All payroll information for BET employees is input into the Infinium system solely by BET's payroll department and/or BET's managers or supervisors. *Id.* The pay stubs and pay checks issued to BET employees contain the BET corporate logo. Moreover, BET is responsible for all of its payroll costs. *Id.* Thus, the fact that Viacom and BET share a payroll processing system does not prove that Viacom exercises any "actual and active control" over BET's day-to-day labor practices.

### 2. Ms. Woodland Fails To Demonstrate That Viacom and BET Have Sufficiently Interrelated Operations.

Ms. Woodland has not made a substantial showing of interrelatedness of operations between Viacom and BET. It is undisputed that Viacom and BET do not share offices, telephone numbers, bank accounts, or equipment, and that they have their own accounting and finance departments. SMF ¶ 6. Where, as here, two entities' use of a common computerized payroll processing system is the sole indicia of interrelatedness of operations, courts have declined to find single employer status. *See, e.g., Miller v. County of Rockingham*, No. 5:06CV00053, 2007 U.S. Dist. LEXIS 58157, *23 (W.D.Va. Aug. 9. 2007); *Hunter v. Ark Restaurants Corp.*, 3 F. Supp. 2d 9, 18 (D.D.C. 1998).

Furthermore, although Ms. Woodland points to the BCS as evidence of interrelatedness, courts do not consider a parent's general policy statements when determining whether two entities have interrelated operations. Rather, the indicia that courts routinely rely on are: (1) combined accounting records; (2) combined bank accounts; (3) combined lines of credit; (4) combined payroll preparation; (5) combined switchboard; (6) combined telephone numbers; and (7) combined offices. *Tewelde*, 89 F. Supp. at 17. Thus, the fact that the BCS applies to BET employees is not an indicia of interrelatedness.

In addition, although Ms. Woodland claims that interrelatedness exists here because Viacom may conduct audits of BET from time to time, courts have declined to find interrelatedness where one entity conducts audits of another but common control over labor relations does not exist. *See, e.g., Lockard*, 162 F.3d at 1070 (holding that franchisor and franchisee were not a single employer despite evidence that the franchisor "may have stringently controlled the manner of its franchisee's operations, conducted frequent inspections and provided training for franchise employees" where franchisor did not control franchisees' labor relations);

*Spaulding v. NW Hospitality Investment Co.*, 209 F. Supp. 2d 1149, 1153-54 (D. Kan. 2002) (finding no interrelatedness even though one entity conducted quality assurance inspections of another and audited its financial and operating books and records).

Moreover, Ms. Woodland's claim that Viacom and BET are interrelated because Mr. Bowman forwarded her an e-mail sent by Leslie Moonves and Tom Freston, Viacom's co-Presidents and Chief Operating Officers, is entirely without merit. Pl.'s Opp. at 17. Ms. Woodland does not cite any legal authority, nor can she, for the assertion that two entities are interrelated simply because an employee of one indirectly receives an e-mail sent by officers of another.

> 3. **Ms. Woodland Fails To Establish That Viacom and BET Have Common Day-To-Day Management.**

In her Opposition, Ms. Woodland fails to establish that, or even address whether, Viacom's management "exercise[s] control over the daily operations and employment practices" of BET. *Hunter*, 3 F. Supp. at 18. Thus, she has not met her burden of making a substantial showing of common day-to-day management.

BET's day-to-day activities are overseen and managed by its own management team, consisting of a Chairman and CEO, President and Chief Operations Officer, Chief Financial Officer, and General Counsel and Chief Administrative Officer, and Senior Vice President of Human Resources, in Washington, D.C. SMF ¶ 12. Although Viacom and BET have some common corporate officers, such officers do not "effectively control the daily operation" of BET, and Ms. Woodland has not attempted to argue otherwise. *Hunter*, 3 F. Supp. 2d at 18. *See also Herman v. Blockbuster*, 18 F. Supp. 2d 304 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999) (unpublished) (no common management where CEO and CFO were same for parent and subsidiary because officers did not participate in employment decisions); *Lockard*, 162 F.3d at

1062 (no common management where individual was vice-president of parent and subsidiary because no evidence that parent controlled subsidiary's day-to-day employment decisions). Thus, because different managers control the daily operations and employment practices at Viacom and BET, Ms. Woodland cannot establish the common day-to-day management prong of the single employer test.

### 4. Common Ownership, Standing Alone, Does Not Establish Single Employer Status.

There is no dispute that BET Holdings LLC is a wholly-owned subsidiary of Viacom.[6] Common ownership is insufficient to defeat summary judgment because common ownership alone does not show anything but a normal parent-subsidiary relationship. *See, e.g., Hunter*, 3 F. Supp. 2d at 19 ("common ownership of subsidiaries by a parent corporation is a characteristic of a corporate enterprise"); *Lusk*, 129 F.3d at 778. Indeed, "common ownership" is the least important of the four prongs, if not entirely meaningless when examining parent/subsidiary relationships, because in every case of the creation or acquisition of a subsidiary by a parent, there will be common ownership. *Papa v. Katy*, 166 F.3d 937 (7th Cir. 1999) (common ownership prong "is useless"); *United Telegraph Workers v. NLRB*, 571 F.2d 665 (D.C. Cir. 1978) ("common ownership is necessarily a feature of any conglomerate organization [and] is not determinative where common control is not shown").

Viacom acknowledges that common ownership exists here, although it maintains that such common ownership is insufficient to establish a single employer relationship. In her Opposition, however, Ms. Woodland argues that the fourth prong of the single employer test is

---

[6] In her Opposition, Ms. Woodland argues that, "On the prong of 'common ownership of financial control,' probative evidence that the parent employs the subsidiary's employees for purposes of liability for workplace discrimination may be found if the "parent … handled the subsidiary's payroll." Pl.'s Opp. at 26. It is not clear what legal authority Ms. Woodland relies on for this proposition, and to Viacom's knowledge, there is none upon which she can rely.

met because Viacom has "financial control" over BET. Pl.'s Opp. at 26-31. Contrary to Ms. Woodland's representations, however, Viacom does not handle BET's payroll. Rather, as noted above, Viacom and BET have separate payroll departments, and all payroll information for BET employees is input into the Infinium system solely by BET's payroll department and/or BET's managers or supervisors. In addition, BET is responsible for all of its payroll costs. SMF ¶ 7.

Furthermore, Ms. Woodland's statement that BET reimbursed Viacom for legal expenses relating to Ms. Woodland's case does not establish that a single employer relationship exists.[7] Courts have declined to give common legal representation much, if any, weight when determining whether two corporations are a single employer. *See, e.g., Tr. of the Operation Eng'r Pension Trust Fund v. G.C. Wallace, Inc.,* No. 87-2668, 1988 WL 97778, at * 1 (9th Cir. 1988).[8]

### B.   In The Alternative, Plaintiff Has Not Established A *Prima Facie* Case of Gender Discrimination.

Although Viacom maintains that it is not Ms. Woodland's employer, and thus it is not a proper defendant in this lawsuit, should this Court somehow find that Viacom can be held liable under the District of Columbia Human Rights Act ("DCHRA"), Viacom is entitled to summary judgment because Ms. Woodland has not established a *prima facie* case of gender discrimination.[9] Specifically, Ms. Woodland has failed to establish that she suffered an adverse

---

[7] If anything, this assertion further supports Viacom's claim that BET, not Viacom, is Ms. Woodland's employer.

[8] Ms. Woodland additionally alleges that Viacom controls the "amount and timing of Plaintiff's bonuses and must approve the same before BET employees receive said bonuses." Pl.'s Opp. at 30. However, she offers no record evidence to support this assertion.

[9] Although Ms. Woodland argues that "Summary Judgment Should Be Granted In Favor Of Plaintiffs [sic] On Count One As Plaintiffs [sic] Are Entitled To Judgment As a Matter of Law For Defendant's Violations of the DCHRA," she is not entitled to summary judgment on Count One because she has not submitted a statement of undisputed facts in accordance with Local Rule 7(h). Pl.'s Opp. at 31.

employment action. Furthermore, her allegations against Mr. Gilmore have no connection to her alleged demotion and are therefore irrelevant.

1. **Ms. Woodland Has Not Established That She Suffered An Adverse Employment Action.**

Ms. Woodland has failed to present sufficient evidence that she experienced a significant change in her job responsibilities. *See Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (where a reassignment or reorganization does not affect a plaintiff's pay or benefits, a claim of adverse employment action must "rest on a significant change in [her] job responsibilities"). The affidavit of Carol Holland, BET's former Director of Facilities and Logistics, does not establish that Ms. Woodland suffered such a significant change. *See* Pl.'s Opp., Ex. 6. In fact, Ms. Holland's affidavit contradicts Ms. Woodland's own deposition testimony.

Ms. Holland's affidavit states that "[Ms. Woodland's] job title was changed to Logistics Coordinator with unspecified duties." As Viacom noted in its Motion for Summary Judgment, the change in Ms. Woodland's title from "Senior Manager" to "Logistics Coordinator," without more, is insufficient to establish an adverse action. *See Flaherty v. Gas Research Institute*, 31 F.3d 451, 457 (7th Cir. 1994). Moreover, Ms. Holland's statement that Ms. Woodland had "<u>unspecified duties</u>" far from satisfies Ms. Woodland's burden of showing that her alleged reassignment "significantly diminish[ed] [her] material responsibilities." *Bialczak v. State*, No. 99-3841, 2000 WL 1888789, at *2 (6th Cir. Dec. 22, 2000) (emphasis added).

Furthermore, in arguing that Mr. Bowman "admitted in his sworn deposition that the duties Plaintiff was required to perform as Logistics Coordinator were those duties of a non-management employee," Ms. Woodland misstates Mr. Bowman's testimony. Pl.'s Opp. at 36. Ms. Woodland alleges that, following her alleged demotion to Logistics Coordinator, her sole job duties were to order coffee for the BET campus and answer Help Desk phone questions

regarding internal complaints. *See* Complaint, ¶ 47. At his deposition, Mr. Bowman clearly testified that those job duties could be done by either administrative support employees *or* management level employees. *See* Pl.'s Opp., Ex. 1 at 41-42.

In addition, Ms. Holland's affidavit contradicts Ms. Woodland's sworn deposition testimony that she was stripped of her supervisory responsibilities. SMF ¶ 47. Specifically, Ms. Woodland stated:

> Q.   When you became Logistics Coordinator who reported to you?
> A.   No one.

Def.'s Mem., Ex. C at 196-197. Ms. Holland's affidavit, however, states that, following her alleged title change, Ms. Woodland continued to direct the work of the help desk ticket crew. Pl.'s Opp., Ex. 5. Because Ms. Woodland cannot establish that her reassignment had any "significant detrimental effect on her," she cannot prove a *prima facie* case of gender discrimination, and thus Viacom is entitled to summary judgment as a matter of law. *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).

The only evidence Ms. Woodland has proffered to support her allegation that her job duties changed significantly is her self-serving testimony to that effect, which is insufficient to establish an adverse employment action. *Goldberg v. B. Green and Co.*, 836 F.2d 845, 848 (4th Cir. 1988) (recognizing that plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of discrimination"); *Sandvik v. United Rentals, Inc.*, No. 04-1057, 2005 U.S. Dist. LEXIS 10719, at * 33 n. 11 (D. Minn. June 2, 2005) ("With respect to [plaintiff's] testimony that she was stripped of all her job duties, her unsubstantiated, conclusory allegation is insufficient to withstand summary judgment.").

### 2. Ms. Woodland's Unsubstantiated and Irrelevant Allegations Against Mr. Gilmore Do Not Raise An Inference Of Discrimination.

In an attempt to raise an inference of discrimination, Ms. Woodland makes unsupported and irrelevant allegations against Mr. Gilmore, namely that he made derogatory remarks regarding another female employee, acted as if he was about to slap Ms. Woodland at a meeting, and was the subject of other female employees' complaints. Pl.'s Opp. at 41-43. These allegations do not raise an inference of discrimination because they have no nexus to her alleged demotion, and thus lend no support to her claim. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) ("[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions"); *Hong v. Children's Mem. Hosp.*, 993 F.2d 1257, 1266 (7th Cir. 1993) (allegedly discriminatory remarks, "when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements were uttered by decision maker") *McManus v. MCI Communications Corp.*, 748 A.2d 949, 956 (D.C. 2000) (finding no inference of discrimination where "there is no evidence linking the alleged statements about appellant's appearance to the decision to terminate appellant's job").

Furthermore, Ms. Woodland has presented conflicting evidence regarding the extent to which Mr. Gilmore was even involved in the decision to allegedly demote her. Although Ms. Woodland attributes the alleged decision to demote her solely to Mr. Gilmore in her Opposition, Ms. Holland states otherwise in her affidavit. Pl.'s Opp. at 47. Ms. Holland's affidavit expressly states: "These decisions were made by Mr. Byron Marchant, Executive Vice President, Corporate Administrative Operations." *Id.*, Ex. 5. Moreover, at her deposition, Ms. Woodland stated that the alleged decision to change her title to "Logistics Coordinator" was made jointly by Mr. Marchant, Mr. Bowman, and Mr. Gilmore. SMF ¶ 27. Given that Ms. Woodland cannot

even establish that Mr. Gilmore was responsible for making the decision to allegedly demote her, her unsubstantiated and conclusory allegations against him are immaterial.

### III.  CONCLUSION

WHEREFORE, for the foregoing reasons, and for those reasons set forth in Viacom's Motion for Summary Judgment and accompanying Memorandum of Points and Authorities, Viacom respectfully requests that the Court grant its Motion for Summary Judgment in its entirety.

Dated: November 21, 2007              Respectfully submitted,

                                      _____/s/_____
                                      Grace E. Speights (D.C. Bar No. 392091)
                                      John S. Ferrer (D.C. Bar No. 489679)
                                      Morgan, Lewis & Bockius LLP
                                      1111 Pennsylvania Ave., N.W.
                                      Washington, D.C. 20004
                                      (202) 739-3000
                                      (202) 739-3001 (Fax)
                                      *Attorneys for Defendant Viacom Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2007, a copy of the foregoing Defendant Viacom Inc.'s Reply In Support of its Motion for Summary Judgment was served via the electronic case filing (CM/ECF) system and first-class mail on Counsel for Plaintiff as follows:

> Jimmy A. Bell, Esq.
> The Law Offices of Jimmy A. Bell, P.C.
> 9610 Marlboro Pike
> Upper Marlboro, MD 20772

/s/
John S. Ferrer
