UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
ANTOINETTE WOODLAND,                   )
                                       )
            Plaintiff,                 )
                                       )
        v.                             )        Civil Action No. 05-1611 (PLF)
                                       )
VIACOM, INC.,                          )
                                       )
            Defendant.                 )
_____)


OPINION

        Plaintiff brings suit under the District of Columbia Human Rights Act

("DCHRA"), alleging discrimination on the basis of her sex.  See Complaint ("Compl.")

¶¶ 81-86; D.C. CODE § 2-1401.01 *et seq.*  This matter is before the Court on defendant's motion

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1]  After

considering all the papers filed by the parties and the relevant case law, the Court will grant

summary judgment for the defendant.[2]

---

[1]     The papers submitted to the Court in connection with this motion include: Defendant's
Motion for Summary Judgment ("Mot."); Defendant's Memorandum of Points and Authorities
in Support of Defendant Viacom's Motion for Summary Judgment ("Mem."); Defendant's
Statement of Material Facts as to Which there is No Genuine Issue ("Def.'s SMF"); Plaintiff's
Opposition to Defendant's Motion for Summary Judgment and Request for Hearing ("Opp.");
Plaintiff's Statement of Material Facts in Dispute ("Pl.'s SMF").

[2]     Plaintiff, who is represented by counsel, requests in her opposition brief that the Court
grant her summary judgment.  See Opp. at 31.  An opposition brief is not the proper vehicle by
which to request judgment as a matter of law.  Only an appropriate motion seeking such relief, in
accordance with the Federal Rules, will serve this purpose.  For the reasons stated herein,
however, it is clear that plaintiff is not entitled to judgment.

I.  BACKGROUND

Plaintiff Antoinette Woodland worked at Black Entertainment Television ("BET") in the District of Columbia from December 2001 until at least the date of her deposition on June 15, 2007.  See Compl. ¶ 8; Deposition of Antoinette Woodland ("Woodland Dep.") at 250.  Plaintiff's title in 2001 was Property Manager.  See Woodland Dep. at 250.  In 2003, plaintiff was promoted to Senior Logistics Manager.  See Compl. ¶ 9.  Plaintiff alleges that she was effectively demoted in October 2004 by Edward Gilmore, her supervisor, despite having received good performance evaluations.  See id. ¶¶ 15, 17, 48.  Plaintiff alleges that her job responsibilities, prior to this de facto demotion, were extensive.  See id. ¶ 45.  She alleges that her subsequent job responsibilities were negligible.  See id. ¶ 46.  Plaintiff also alleges that the demotion "coincided" with Gilmore's hiring of a male to fill her position.  See id. ¶¶ 39-44.  She alleges that Gilmore previously had made "negative, disparaging and/or slanderous remarks about Plaintiff's job performance to BET employees."  Id. ¶ 18.

Viacom moves for summary judgment, arguing that it is not plaintiff's employer. The facts relevant to a ruling on this motion, therefore, surround the corporate status of BET and its parent company Viacom, Inc.  Viacom is an incorporated entity chartered in the state of Delaware.  See Compl. ¶¶ 1, 4; Declaration of Betty A. Panarella ("Panarella Decl.") ¶ 3.  BET Holdings LLC is a subsidiary of Viacom, and BET Television LLC is a subsidiary of BET Holdings LLC.  Id. ¶ 3.  Rather than name BET as a defendant, plaintiff chose to name only Viacom, Inc.

Despite the entities' legally separate status, plaintiff asserts that defendant and BET operate as a single integrated entity and that defendant Viacom therefore is liable for the actions of the BET employees who allegedly discriminated against her.  See Opp. at 9.  In

support of this proposition, plaintiff alleges that BET and Viacom have a combined payroll

system.  See Pl.'s SMF ¶¶ 1, 5, 8.  Plaintiff further asserts that defendant controlled BET's labor

relations through such elements as a Business Conduct Manual, a policy memorandum issued by

the then co-chief operating officers of Viacom.  See id. ¶¶ 2-4, 6-8.  Finally, plaintiff alleges that

the common ownership of the two corporations and the alleged financial control that defendant

had over BET makes them a "single employer."  In support of her allegations of financial

control, plaintiff notes that 500 stock options, for Viacom stock, were offered to plaintiff in

recognition of plaintiff's job performance.  See id. ¶ 9; Pl.'s Ex. 1; Pl.'s Ex. 2.

## II.  LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits [or declarations] show that there is no genuine

issue as to any material fact and that the movant is entitled to a judgment as a matter of law."

FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986);

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it

might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant

or unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433

F.3d at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if

the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When a

motion for summary judgment is under consideration, "the evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in [her] favor."  Anderson v. Liberty

Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 849-50

(D.C. Cir. 2006); Aka v. Washington Hosp. Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Washington Post Co. v. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). She is required to provide evidence that would permit a reasonable jury to find in her favor. Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S.Ct. 1769, 1776 (2007) ("where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [his] claims." Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

The District of Columbia Human Rights Act prohibits employment discrimination on the basis of "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation of any individual." D.C. CODE § 2-1402.11. "The elements for proving discrimination . . . under the DCHRA are directly

4

analogous to those required under Title VII, and District of Columbia courts borrow from federal Title VII case law in interpreting the DCHRA." Bagenstose v. District of Columbia, 503 F. Supp. 2d 247, 260 (D.D.C. 2007). The elements for discrimination, therefore, are: (1) that plaintiff suffered an adverse employment action (2) because of, in this case, her sex. See Brady v. Sergeant at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008) ("This statutory text establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin.").

## III.  DISCUSSION

In order to find liability under the DCHRA, the Court must determine first that the named defendant, Viacom, Inc., is the plaintiff's "employer" within the meaning of the statute. See Zuurbier v. MedStar Health, Inc., 306 F. Supp. 2d 1, 6 (D.D.C. 2004). In the absence of an unambiguous direct employer-employee relationship, the Court in some circumstances may find DCHRA liability by a parent company for the acts of its subsidiary under the "single employer" doctrine. See Hunter v. Ark Rest. Corp., 3 F. Supp 2d 9, 18 (D.D.C. 1998).

In order to determine whether two separate corporate entities can be considered a "single employer," courts examine four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations and personnel; and (4) common ownership or financial control. See Hunter v. Ark Rest. Corp., 3 F. Supp 2d at 18 (using "single employer" test for DCHRA actions); see also Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, 380 U.S. 255, 256 (1965) (Supreme Court endorsed the "single employer" test for Title VII cases); Tewelde v. Albright, 89 F. Supp. 2d 12, 17

5

(D.D.C. 2000).[3]  "Although the absence or presence of any single factor is not conclusive, the

control over the elements of labor relations is a central concern."  E.E.O.C. v. St. Francis Xavier

Parochial Sch., 928 F. Supp. 29, 33 (D.D.C. 1996) (citing Armbruster v. Quinn, 711

F.2d 1332, 1337 (6th Cir. 1983)), rev'd on other grounds, 117 F.3d 621 (D.C. Cir. 1997).

Furthermore, as Judge Harris explained:

> Plaintiff must make a substantial showing to warrant a finding of
> "single employer" status. There must be "sufficient indicia of an
> interrelationship between the immediate corporate employer and the
> affiliated corporation to justify the belief on the part of an aggrieved
> employee that the affiliated corporation is jointly responsible for the
> acts of the immediate employer."

E.E.O.C. v. St. Francis Xavier Parochial Sch., 928 F. Supp. at 33 (quoting Armbruster v.

Quinn, 711 F.2d at 1337).


### A.  Interrelation of Operations

The following are all indicia of interrelatedness of operations: combined

accounting records, bank accounts, lines of credit, payroll preparation, telephone numbers or

offices.  See W. Union Corp., 224 N.L.R.B. 274 (1976), aff'd, 571 F.2d 665 (D.C. Cir. 1978),

cert. denied, 439 U.S. 827 (1978); Hunter v. Ark Rest. Corp., 3 F. Supp. 2d at 18; E.E.O.C. v. St.

Francis Xavier Parochial Sch., 928 F. Supp. at 33.  Plaintiff does not allege that there is any

commonality between BET's and Viacom's accounting records, bank accounts, lines of credit,

telephone numbers or offices.  Plaintiff asserts, however, that since Viacom requires all of its

subsidiary companies to utilize the Infinium payroll system, and that Viacom conducts regular

audits of its subsidiaries' payroll records, this is at least one indicator of interrelatedness.

---

[3]     Plaintiff, in her motion papers, blurs the lines between the four factors.  The Court will
address each of plaintiff's allegations and arguments under the appropriate framework.

Compl. ¶ 7; Woodland Dep. at 50-52; Opp. at 26. These assertions aside, it is undisputed that

the BET human resources department, not Viacom, prepares the payroll for BET employees, see

Panarella Decl. ¶ 7, and the facts and evidence, viewed in the light most favorable to plaintiff, do

not suggest that Viacom has any hand in payroll *preparation*.

       The use of a common payroll system is not itself an indicator of interrelatedness.

Cf. Greason v. Se. R.R. Assoc. Bureaus, 650 F. Supp 1, 4 (N.D.Ga. 1986) (where one company

serves as the fiscal agent of another, including issuing paychecks, no "single employer" status

found); Miller v. County of Rockingham, Civil Action No. 06-0053, 2007 U.S. Dist. LEXIS

58157, *23 (W.D.Va. Aug. 9, 2007) (service as a fiscal agent alone is not enough to establish

"single employer" status). And plaintiff's allegation that her paychecks come from Viacom is

likewise without merit, as the funds are drawn from different accounts and merely are printed at

the same location. See Hunter v. Ark Rest. Corp., 3 F. Supp. 2d at 18 (common source of check

printing not indicative of interrelatedness).

### B. Common Management

       To determine if a parent and its subsidiary have common management, the Court

looks to "common directors and officers who exercise control over the daily operations and

employment practices of the entities." Hunter v. Ark Rest. Corp., 3 F. Supp. 2d at 18 (citing

E.E.O.C. v. St. Francis Xavier Parochial Sch., 928 F. Supp. at 34). In this case, plaintiff presents

no evidence that there are any common officers or directors between BET and Viacom.

Nevertheless, defendant has acknowledged that Viacom and BET do share some common

officers, but points out that these officers do not control the daily operations of BET. Instead,

BET's daily operations are managed by a team of its own unique officers including "its

Chairman and CEO, President and Chief Operations Officer, Chief Financial Officer, General Counsel and Chief Administrative Officer, and Senior Vice President of Human Resources." Mem. at 13-14; see also Def.'s SMF ¶ 12. Thus, even construing the facts in the light most favorable to plaintiff, there is no showing that there is any common management between defendant and BET. See Hunter v. Ark. Rest. Corp., 3 F. Supp. 2d at 18.

### C. Centralized Control of Labor Relations and Personnel

"The centralized control of labor relations factor is the most important one in the integrated enterprise test." Richard v. Bell Atl. Corp., 976 F. Supp. 40, 44 (D.D.C. 1997). In order to establish the "control" element, a plaintiff must demonstrate that this control is not merely potential, but "actual and active control of day-to-day labor practices." E.E.O.C. v. St. Francis Xavier Parochial Sch., 928 F. Supp. at 34 (quoting Fike v. Gold Kist, Inc., 514 F. Supp. 722, 727 (N.D.Ala. 1981)) (internal quotations omitted). A "parent's broad general policy statements regarding employment matters are not enough to show centralized control of labor relations." Richard v. Bell Atl. Corp., 976 F. Supp. at 45 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1363 (10th Cir. 1993)) (internal quotations omitted). Sufficient "control" has been found when all of the following were present: (1) direct participation in the evaluation of its subsidiary employee's performance, (2) implementation of a comprehensive employment policy for use by subsidiaries, (3) development and implementation of allegedly discriminatory testing procedures used by subsidiaries, and (4) influence and/or control over transfer or promotion of its subsidiaries' employees. See Richard v. Bell Atl. Corp., 976 F. Supp. at 44.

Of these, plaintiff alleges only the implementation of a comprehensive employment policy. Plaintiff asserts that because Viacom issued a Business Conduct Statement

8

("BCS") to all employees of its subsidiaries, this constitutes sufficient control over labor relations to establish that defendant and BET were a "single employer."  See Opp. at 12-16.  The BCS is "a general corporate code of conduct that sets forth general employment-related policies that apply to the employees of Viacom and to the employees of Viacom's divisions and subsidiaries."  Def. SMF ¶ 10.  The Business Conduct Statement in this case merely advises employees how to conduct themselves in their relationships with other employees, informs them of their rights and benefits, and discusses financial improprieties and the handling of intellectual property.  See  Deposition of Quinton Bowman ("Bowman Dep.") at 13.  BET had its own employee handbook, and the Business Conduct Statement was merely supplementary to that; the BCS did not supercede BET's employee handbook.  See Bowman Dep. at 8.  Plaintiff further asserts that, in addition to Viacom requiring training on the Business Conduct Statement and employees' signatures acknowledging that each subsidiary's employee has received and understood the document, Viacom periodically conducted audits of BET concerning the BCS. See Opp. at 22-23.  Plaintiff fails to cite any evidence in support of this argument, see Opp. at 22-23; in fact, the evidence in the record reflects the opposite.  In his deposition testimony, the Senior Vice President of Human Resources, Quinton Bowman, noted that Viacom does not audit BET's personnel department and that any audits are only of the financial records.  See Bowman Dep. at 52-53.  When this evidence is viewed in the light most favorable to plaintiff, the existence of the common Business Conduct Statement falls short of establishing a genuine issue of material fact as to the control of labor relations.

Furthermore, plaintiff's assertion that a separate Viacom policy memo, written by its co-chief operating officers and forwarded by Quinton Bowman, "demonstrates the degree of interrelatedness of business operations between defendant and its employees" is without merit.

9

Opp. at 17; See Ex. 4 to Pl.'s Opp. to Motion to Dismiss.  The content of the memo contains no

controlling language at all.  It is merely an update in the organizational structure of Viacom's

Business Compliance and Ethics Program.  See id.   There is no indication that this memo was

designed to control the *day-to-day management* of labor relations at BET.

When the evidence is construed in plaintiff's favor, plaintiff raises no genuine

issue of material fact as to whether defendant had the requisite control over labor relations at

BET.  Therefore, plaintiff fails to meet her burden on this, the most probative prong of the

"single employer" test.

### D.   Common Ownership and Financial Control

The parties agree that BET is wholly owned by BET Holdings LLC and that BET

Holdings LLC is wholly owned by defendant Viacom, Inc.  "In the absence of the other factors,

however, 'common ownership is not determinative where common control is not shown.'"

Hunter v. Ark Rest. Corp., 3 F. Supp. 2d at 19 (quoting United Tel. Workers v. N.L.R.B., 571

F.2d 665, 667 (D.C. Cir. 1978), cert. denied, 439 U.S. 827 (1978)). The parent-subsidiary

relationship is a "feature of any conglomerate organization . . . ."  United Tel. Workers v.

N.L.R.B., 571 F.2d at 665.  The probative value of common ownership, therefore, is minimal

and the Court's inquiry must focus on common financial control.

Plaintiff also fails to allege significant financial control on the part of defendant

over BET.[4]  Plaintiff relies heavily on the issuance to her of 500 shares of Viacom common

---

[4]    Plaintiff alleges in her opposition that defendant "controls the amount and timing of
Plaintiff's bonuses and must approve the same before BET employees receive said bonuses."
Opp. at 30.  She fails to cite any *evidence* for this allegation, however, and the Court can find
none in the record.

stock in recognition of her job performance.  See Pl.'s SMF ¶9; Pl.'s Ex. 1; Pl.'s Ex. 2.  This fact

is immaterial.  Cf. In re Silicone Gel Breast Implants Prods. Liab. Litig., 837 F.

Supp. 1128, 1136 (N.D.Ala 1993) ("The court views the matter concerning the use of the

parents' stock as of minimal significance in considering plaintiffs' attempt to pierce the

corporate veil of Dow Corning.") vacated in part on other grounds, 887 F. Supp. 1455

(N.D.Ala. 1995).  Because BET is a subsidiary of Viacom, it is not publicly traded.  The only

way to reward employees with stock options is to do so with stock options for the publicly traded

parent corporation.  See id.  This does not suggest financial control on the part of the parent over

the subsidiary and fails to establish that they are a "single employer."

       Plaintiff alleges that defendant must approve of any decisions regarding pay

raises or bonuses.  See Opp. at 30.  Plaintiff fails to cite any evidence to support this.  See id.  In

fact, in her own deposition, plaintiff admits that all decisions concerning her employment,

compensation, promotion and alleged demotion were made at BET by BET human resources

personnel.  See Woodland Dep. at 21-23, 32-34, 37, 49.  Furthermore, as already noted, BET has

its own payroll department, not controlled by defendant.

       Plaintiff does not submit evidence to establish any genuine issue of material fact

regarding whether defendant exercises financial control over BET.  Common ownership alone is

insufficient.  Accordingly, plaintiff fails to meet her burden for this prong of the "single

employer" test.

IV.   CONCLUSION

Viewing the evidence in the light most favorable to plaintiff, the Court finds that she fails to raise a genuine issue of material fact as to whether defendant Viacom and BET are a "single employer."  On the basis of the undisputed evidence material to this issue, the Court concludes that they are not.  Therefore, since only "employers" may be found liable under the DCHRA, the Court will grant defendant Viacom's Motion for Summary Judgment.  An appropriate Order accompanying this Opinion will be issued this same day.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   August 5, 2008

12